GREATER NEW YORK MUTUAL INSURANCE COMPANY, PLAINTIFF, v. FRANK A. AMBROSIO, CONROSE CONSTRUCTION CORP., CARNELL CONSTRUCTION CORP., F. J. WILKES CO., INC. AND ALLEN ZANE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 25, 1970.

*Mr. Erwin C. Schnitzer* for plaintiff.

*Mr. Frederick J. Johnson, Jr.* for defendant Frank A. Ambrosio (*Mr. Charles B. Klitzman,* attorney).

*Mr. Leonard Rosenstein* for defendants F. J. Wilkes Co., Inc. and Allen Zane (*Messrs Feuerstein, Sachs & Maitlin,* attorneys).

*Mr. Jack L. Cohen,* attorney for the receiver in chapter XI proceeding under the Bankruptcy Act for Carnell Construction Corp., did not appear.

LANE, J. S. C. The complaint in this matter seeks a judgment rescinding a workmen's compensation insurance policy written by plaintiff insuring defendant Conrose Construction Corp. (Conrose) and a declaratory judgment that plaintiff is not responsible under the policy for any workmen's compensation award that may be recovered by defendant Frank A. Ambrosio (Ambrosio) against Conrose under a claim petition presently pending in the Division of Workmen's Compensation. Ambrosio counterclaimed for a declaratory judgment that plaintiff was obligated for such workmen's compensation benefits as the Division might determine to be due to him either under a policy issued to Conrose or under a policy of workmen's compensation insurance issued by plaintiff to defendant Carnell Construction Corp. (Carnell). The matter is before the court on final hearing.

Conrose was a subcontractor on a construction job in Asbury Park; Carnell was the general contractor. Workmen's compensation insurance for Conrose and certain other subcontractors on the job was arranged for by the controller of Carnell, a Mr. Blackwell. Policy No. 35378 was issued by plaintiff to Conrose covering the period August 24, 1964 to August 24, 1965. The policy was originally written to cover only the particular Asbury Park job. As a result of a request received from the broker, defendant F. J. Wilkes Co.,

Inc. (Wilkes), through its agent defendant Allen Zane (Zane), the company cancelled that policy effective July 30, 1965. The reason given for the request for cancellation was that Conrose had finished its work on the job. A proper notice of cancellation was sent to the insured and to the Compensation Rating Bureau. On August 30, 1965 Ambrosio, an employee of Conrose, sustained an accident alleged to have been work-connected, resulting in serious injuries. On September 9, 1965 plaintiff received a communication from Zane requesting the reinstatement of policy No. 35378 as of July 30, 1965 and a renewal as of the expiration date, August 24, 1965. In his communication to the company Zane stated that the request for cancellation had been in error and that there had been no known claims under the policy between July 30, 1965, the date of the cancellation, and September 9, 1965, the date of the request for reinstatement. Zane had received the request for the reinstatement from Blackwell. Blackwell told Zane that the request for cancellation had been made in error; that Conrose was actually still working on the job, and that there had been no known accidents or claims between the date of the cancellation and the request for reinstatement.

In accordance with the request the initial policy was reinstated and the renewal was issued. The renewal policy was subsequently cancelled January 8, 1966 for non-payment of premium.

Plaintiff had not only written a policy for Conrose but also had written a workmen's compensation policy for Carnell which was in force at the time Ambrosio sustained his accident.

Ambrosio's connection with Conrose and Carnell is not entirely clear. He testified that at the time of the accident he was employed by Conrose as foreman and "part supervisor" with authority to sign checks. He had been an officer of Conrose a few years before the date of the accident but did not remember if he was a stockholder in 1965. He was

not at the time of the accident an officer of Carnell but later became one. He had been instrumental in obtaining financing for Carnell. His testimony as to his exact status with Conrose and Carnell at the time of the accident was vague, which is understandable in light of the passage of time and the severity of his injuries sustained in the August 30, 1965 accident. Following the accident he was in intensive care for two months. He did not appear to be a well man at the trial. It is clear to the court that Ambrosio was more than an employee of Conrose but his exact participation cannot be determined.

The contention of plaintiff is that it is entitled to rescission because at the time of the request for the reinstatement and renewal of the policy the insured knew that the accident had occurred and did not reveal such fact. There is no doubt that Blackwell, when he made the request for reinstatement, was fully aware of the accident and did not reveal the accident to Zane at that time. It is equally clear that had he revealed the accident, plaintiff would not have acceded to the request for reinstatement and renewal. There is, however, no proof that Ambrosio had anything to do with the request for the reinstatement and renewal. The request came nine days after his accident, at a time when he was in intensive care at the hospital.

In *Mallock v. Hollis,* 153 *Kan.* 227, 109 *P.* 2d 119 (Sup. Ct. Kan. 1941), dealt with a very similar situation. The court held that the policy was void. During the course of its opinion the court stated:

While the propriety of permitting the antedating of insurance policies may be debatable, the legality of the practice is well established, provided, of course, that good faith on both sides is present. Parties to the contract have a right to agree on the beginning as well as the ending of the term covered by the policy. We have found no authority, however, either textbook writer or decided case, where the validity of such a contract is not dependent upon an uncertain and unknown loss. There must be mutuality of risk. There must be no knowledge by either party, undisclosed to the other, at the time the contract is made which destroys the uncertainty of loss as far

as he is concerned. This proposition will presently receive further attention.

It is not questioned that insurance policies, being contracts, are subject to the same essential requirements as pertain to contracts generally — meeting of the minds, mutuality, consideration, etc. In insurance contracts "a risk or contingency insured against" is an indispensable factor. Without it the very basis of an insurance contract is absent. 32 C. J. p. 1095. This contingency, or uncertain event, is in the nature of a condition precedent. "A breach of condition precedent renders the policy void at its inception, so that it never attaches." 3 Cooley's Briefs on Insurance, 2d Ed., p. 1918.

The distinction between a fraudulent concealment of a loss already suffered, in order to secure insurance coverage of such loss, and fraudulent representations as to other matters which might or might not have led the insurance carrier to refuse the risk, is apparent. If A applies for fire insurance upon a building and fraudulently represents that he has had no fire losses, the policy may be voidable and subject to cancellation by the insurer upon discovery that the insured had had losses under circumstances making the new risk undesirable. But if he applies for insurance knowing that the building has already been destroyed by fire, conceals the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches. It is void because there is no uncertain event, no contingency or risk mutual in character which is the basic factor in insurance contracts. The principle is akin to the rule that "if no insurable interest exists, the contract is void." 29 Am. Jur. p. 289. There are many cases where antedated fire insurance policies have been upheld where the property insured had been destroyed prior to the application, but the loss was unknown to the insured. The uncertainty was equally present in the minds of both parties. The premium was paid and the liability assumed for the agreed purpose of covering the uncertainty. This class of policy has been especially common in marine insurance providing protection "lost or not lost" of vessels which have previously sailed. But concealment of a known loss obviously destroys the very basis upon which such antedated policy rests. To put it another way: While insurance contracts are not technically wagering contracts, an applicant for insurance stakes his premium payment on the chance that there will be a loss. By the same token, the insurance carrier takes a chance—the heavy odds being represented by the face of the policy as against the premium — that there will be no loss. But if the applicant knows his house has already burned down, he is taking no chance, and the policy is not merely voidable, but is void. The implied condition, requisite to the contract, is absent." [109 P. 2d, at 123–124]

See also *Commercial Standard Ins. Co. v. Farmers Alliance Mut. Ins. Co.*, 385 *F.* 2d 826 (10 Cir. 1967); *Lima v. In-*

*dustrial Accident Commission,* 1 Cal. App. 2d 43, 36 *P.* 2d 223 (Dist. Ct. of App. Cal. 1934); Annotation, "Antedating policy of insurance as affecting liability for loss that had already occurred," 132 *A. L. R.* 1325 (1941).

In *Continental Casualty Co. v. Lanzisero,* 119 *N. J. Eq.* 166 (E. & A. 1935), the court held that an automobile liability insurer was entitled to rescind a policy obtained by fraudulent concealment of the fact that an accident had occurred before the application for the policy was made.

There is no doubt that the reinstatement and the renewal of the workmen's compensation policy to Conrose was obtained by fraud. The question remains, however, whether this court should grant equitable relief to plaintiff under the circumstances.

If Conrose, Ambrosio's employer, had no workmen's compensation insurance at the time of the accident, the general contractor, Carnell, would have been liable for any compensation which might be due to Ambrosio. *N. J. S. A.* 34:15-79. By virtue of the policy that had been issued to Carnell plaintiff would have been called upon to make compensation payments. The claim petition against Conrose was filed with the Division of Workmen's Compensation on December 5, 1966. An amended petition was filed April 3, 1968 joining Carnell as a respondent. The insurance company takes the position that there is no liability as to Carnell because the amended claim petition was not filed within two years of the date of the accident, as required by *N. J. S. A.* 34:15-51. In this position plaintiff is probably correct.

None of the answering pleadings raised the issue of laches. It is not contained in the pretrial order. After the initial hearing in the matter the court felt that it would be a manifest denial of justice if the issue were not raised. Therefore, the court on its own motion amended defendants' answers and the pretrial order to raise that issue, *cf., Douglas v. Harris,* 35 *N. J.* 270, 281 (1961), and afforded plaintiff an opportunity for a hearing on that issue.

The insurance company knew about the accident in October 1965. At the time it received notice of the accident it must have received information as to the date of the accident. At that time it had sufficient knowledge so that it could have brought a suit for rescission. It did not do so, however, until the complaint in this matter was filed April 15, 1969. At the continued hearing no explanation was given for inaction by the company before it referred the file to its attorney in May 1967. When the attorney received the file he was instructed not to impose an answer because there was a question of coverage. Plaintiff and its attorney knew that they intended to raise a coverage question, yet did nothing concrete to alert Ambrosio of plaintiff's position until it was too late for him to join the general contractor as a respondent in the workmen's compensation action within the statutory period.

■ Conrose is not financially responsible. If plaintiff had brought suit to rescind the Conrose policy within two years of the date of the accident, or even intimated that it was going to do so, Ambrosio would have been alerted to file a claim petition joining Carnell as a respondent. Here there was unreasonable delay on the part of the insurance company, unexplained and unexcused, which has resulted in substantial prejudice to Ambrosio. Under such circumstances the request for equitable relief will be denied on the ground of laches on the part of plaintiff. *Good v. Lackawanna Leather Co.*, 96 *N. J. Super.* 439, 459 (Ch. Div. 1967); 2 *Pomeroy's Equity Jurisprudence* (5th ed. 1941), § 419d, at 177; 3 *Id.* § 965, at 862. *Cf. Merchants Ind. Corp. v. Eggleston*, 37 *N. J.* 114, 130–131 (1962); *West Jersey Title, & Guaranty, Co. v. Industrial Trust Co.*, 27 *N. J.* 144, 153 (1958); *Auciello v. Stauffer*, 58 *N. J. Super.* 522, 530 (App. Div. 1959).

■ It has been said that in a court of equity the rule of laches is not applied in favor of the perpetrator of a fraud, *Gallagher v. New England Mut. Life Ins. Co. of Boston*, 19 *N. J.* 14, 23 (1955). However, Ambrosio, the

prejudiced party, was not the perpetrator of the fraud; rather, the perpetrator was Blackwell.

There is another ground for holding that plaintiff must defend Conrose. After policy No. 35378 was issued to cover the one location in Asbury Park, the Compensation Rating Bureau required an endorsement eliminating the restriction of coverage because such restriction was void by reason of *N. J. S. A.* 34:15–87, which provides:

> No policy of insurance against liability arising under this chapter shall contain any limitation of the liability of the insurer to an amount less than that payable by the assured on account of his entire liability under this chapter, and no provision of such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location, or employment carried on by an assured unless the business, plant, location, or employment excluded by such restriction shall be concurrently separately insured or exempted as provided for in this article.
>
> No such policy of insurance or any indorsement thereon shall insure against any liability whatsoever other than the liability of the employer for compensation under this chapter and for damages imposed by law because of personal injuries, including death at any time resulting therefrom, sustained by his employees.
>
> No action shall be maintained for the collection of premiums on any policy violating any provision of this article. Any policy issued contrary to the provisions of this section shall be construed as incorporating the provisions herein contained. No insurer shall, in action brought upon such policy, plead in defense of such action any provision of such policy which violates any provision of this section.

A second policy (No. WC 1629038295) was issued by plaintiff to Conrose specifically covering a job in Paterson. The term of that policy was from June 23, 1965 to June 23, 1966. As long as policy No. 35378 was in force with the endorsement eliminating the restriction to Asbury Park, policy No. WC 1629038295 did not contravene *N. J. S. A.* 34:15–87. As soon as policy No. 35378 was cancelled (July 30, 1965), the other policy (WC 1629038295), by virtue of the third paragraph of *N. J. S. A.* 34:15–87, had to be construed to cover all of Conrose's activities in New Jersey regardless of the attempted restriction to the project in

Paterson. See *Raab v. American Casualty Co.*, 4 *N. J.* 303, 306 (1950).

There was an attempt by the plaintiff to prove that there was in force another workmen's compensation insurance policy issued by Liberty Mutual Insurance Company in New York with an all-states endorsement. No credible evidence supported such contention.

There will be a declaratory judgment that Greater New York Mutual Insurance Company is under an obligation to defend the workmen's compensation claim petition filed by Ambrosio to recover benefits as the result of his accident of August 30, 1965 and to pay any judgment that may be rendered against it. See *N. J. S. A.* 34:15–84. Of course, there is reserved to plaintiff any defenses that may be available under the Workmen's Compensation Act, other than lack of coverage. Although the complaint named Wilkes and Zane as defendants, no relief is sought against them. There will be a dismissal. Ambrosio filed a crossclaim against Wilkes and Zane, but the crossclaim does not seek any relief against them. It will, therefore, be dismissed as to them. Costs will be taxed in favor of the defendants.