683 A.2d 1169

JEFFREY LOHMEYER, INDIVIDUALLY AND AS A REPRESENTA-
TIVE OF BARRETTI KOOCK STABLE, PLAINTIFF–APPEL-
LANT, v. FRONTIER INSURANCE COMPANY, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1996—Decided November 6, 1996.

Before Judges PETRELLA and LANDAU.

*Nicholas C. Caliendo* argued the cause for appellant (*Schottland, Aaron & Manning,* attorneys; *Michael D. Schottland,* of counsel; *Mr. Caliendo,* on the brief).

*David Lustbader* argued the cause for respondent (*Philip M. Lustbader, David Lustbader,* attorneys; *David Lustbader,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The issue on this appeal is the extent of workers' compensation coverage provided in a policy of insurance issued by Frontier Insurance Company (Frontier) to Barretti Koock Stable. Jeffrey Lohmeyer brought a declaratory judgment action against Frontier seeking a declaration of coverage for a work-related injury. After

a hearing, the trial judge found that the policy did not provide coverage for the site where the accident occurred, and dismissed Lohmeyer's complaint.

On appeal, Lohmeyer argues that the judge ignored the clear dictates of *N.J.S.A.* 34:15–87 in reaching his decision, disregarded ambiguities in Frontier's policy, and ruled inconsistently with the overall intent of the regulatory scheme of the New Jersey Racing Commission (Racing Commission). Lohmeyer relies on the requirement in *N.J.S.A.* 34:15–87 mandating workers' compensation coverage for all business related activities, even if the policy does not cover the particular location at which the injuries occurred.

According to Lohmeyer's claim petition, on September 16, 1994, he was "thrown from horse" and injured while employed as a trainer by the Barretti Koock Stable at a facility known as Meadows Run Training and Breeding Center in Colts Neck, New Jersey. The applicable policy insured Barretti Koock Stable, identified in the policy as located at an address in North Caldwell, New Jersey. Paragraph 1. on the "Information Page" of the "Workers Compensation and Employers Liability Insurance Policy" specified the following:

> Other workplaces not shown above: Meadowlands, Freehold Raceway, Garden State Show Place/Flemington, NJ, Gaitway Farm/Englishtown, NJ Scenic View/Clarksburg, NJ, Laura Lan Farm/Blairstown, NJ, Willowbrook/Titan Falls, NJ, Egyptian Acres/New Egypt, NJ, Cowtown/Woodstown, NJ, East Lynne Farm/Flemington, NJ.

The policy also went on to state in paragraph 3.A. of that page: "Workers Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: New Jersey." Various endorsements were attached and the premium for the renewal policy period of January 29, 1994 to January 1, 1995, was apparently $189.

Workers' Compensation was covered in Part One of the policy. Employers' liability insurance was covered in Part Two of the policy. One of several endorsements to the policy stated:

This endorsement applies only to the insurance provided by Part Two (Employers Liability Insurance) because New Jersey is shown in item 3.A of the Information Page.

We may not limit our liability to pay damages for which we become legally liable to pay because of bodily injury to your employees if the bodily injury arises out of and in the course of employment that is subject to, and is compensable under, the workers compensation law of New Jersey.

### Another endorsement recited:

In consideration of RSNJ34:15–87 the liability imposed on the insured is limited to jockeys (both journeymen and apprentices) drivers, exercise riders, grooms, hot-walkers, stablehands, and other persons employed by the insured at the following race tracks:

Meadowlands

Monmouth Park

Garden State Park

Freehold

Atlantic City Race Course

And to the following Standardbred Sire Stake Race Days:

Scenic View Acres (1/2 mile track),

Clarksburg, N.J.

Willowbrook Farm (1/2 mile track),

Freehold, N.J.

Egyptian Acres (1/2 mile track),

New Egypt, N.J.

Cowtown Fair (1/2 mile track),

Woodstown, N.J.

East Lynne Farm (1/2 mile track),

Flemington, N.J.

Big Z Farm (1/2 mile track),

Montague, N.J.

Showplace Farms (5/8 mile track),

Englishtown, N.J.

Laura Land, Blairstown, N.J.

N.J. State Fair (mile track),

Cherry Hill, N.J.

The limitation imposed by this endorsement is in consideration of the fact that all other obligations of the insured imposed by the New Jersey Worker's Compensation Law are concurrently, separately insured.

Another relevant provision of the policy provides in the "General Section," subparagraph "E. Locations," as follows:

> This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

Thus, paragraph E. of the General Section covers all other workplaces in Item 3.A., listed as "New Jersey" on the Information Page of the policy, unless the insured had other insurance or was self-insured.

Frontier asserts that the Declaration or Information Page of its policy designated specific locations for which the policy afforded workers' compensation coverage. The list of pari-mutuel and Fair/Sire stakes race tracks does not include Meadows Run Training and Breeding Center where Lohmeyer was injured. Frontier further asserts that not only is there a geographic restriction, but that its policy is also limited to the actual race days themselves and does not cover incidents during training sessions at the listed tracks even though no such restriction as to race tracks, except as to "Sire Stake" races, appears anywhere in the policy. Frontier also contends that the policy premium was computed without regard to the policyholder's payroll.

Workers' compensation policy premiums are normally calculated based upon the insured's total annual payroll. Generally, upon applying for such coverage the insured must estimate the prospective payroll for the upcoming year. The premium is then calculated as a percentage designed by the Compensation Rating and Inspection Bureau according to the level of risk associated with the employment of the prospective payroll. At the end of each year the insurance company conducts an audit to determine if the insured paid out the estimated payroll; if there is any difference, the excess premium is returned to the insured or, if there is a deficiency, the insured must pay the balance. However, Frontier's policy is not based upon the insured's payroll, presumably because it is represented that most horse owners do not have a payroll. Therefore, the policy premium for the year involved was

a flat annual premium of $189.00.[1]

The judge heard testimony to the effect that many trainers, drivers, jockeys, and owners lacked adequate insurance because the legal status of such individuals as employers and employees was unclear. Additionally, many horse owners are also trainers and drivers, and therefore, cannot obtain traditional workers' compensation insurance unless they set up a corporate entity. Moreover, most owners do not maintain workers' compensation insurance for trainers, drivers, or jockeys because these individuals may be considered independent contractors and not qualify for workers' compensation insurance. *But see Biger v. Erwin,* 57 *N.J.* 95, 97, 270 *A.2d* 12 (1970) (holding that a free-lance jockey was an employee of the horse owner but not of the trainer or the race track).

In 1989, responding to this problem, the Racing Commission mandated that all owners obtain workers' compensation insurance for on-track employees not covered by traditional workers' compensation insurance. *N.J.A.C.* 13:71–6.1. In cooperation with members of the insurance industry, including Frontier, a special policy and premium was created to provide supplemental workers' compensation insurance covering trainers, drivers, jockeys, and owners who could not otherwise obtain workers' compensation insurance. The special policy was referred to as the New Jersey Racing Industry Workers' Compensation Program. The Department of Insurance approved the special policy and premium.

Complicating this case further was the testimony of Susan Wolin, an insurance agent, which highlighted some of the confusion within the racing industry regarding the Frontier policy. She testified that in order to obtain assigned risk coverage through the New Jersey Compensation Rating and Inspection Bureau one must first obtain the "supplemental" Frontier policy. Wolin testified, however, that she has submitted applications to the Compen-

---

[1] The premium for 1994 was $189.00, but the policy has subsequently been adjusted upward annually to account for Frontier's expenses.

sation Rating and Inspection Bureau for assigned risk coverage where the applicant maintained a Frontier policy, yet primary coverage through the assigned risk plan was still denied. The trial judge found this testimony credible, but concluded that the confusion was not caused by Frontier.

There was uncertainty as to the nature and scope of the insurance the Racing Commission requires owners and trainers to carry, as well as that provided by Frontier. In response to this confusion, Frontier says it disseminated an information sheet explaining the limited nature of its policy and advising that traditional workers' compensation coverage was still needed for off-track employees. Lohmeyer disputes this, however, contending that Frontier never sent such information. The Standardbred Breeders & Owners Association circulated a letter purporting to explain the Racing Commission's mandate that all owners and trainers carry workers' compensation insurance and the scope of the coverage provided by the mandatory Workers' Compensation Program. The Racing Commission circulated a similar information package to answer common questions regarding the coverage provided. In addition, it issued a notice to the industry explaining its mandate that all trainer/owners [2] obtain workers' compensation insurance. The notice explained the geographic limitation of the mandatory policy:

> This coverage is mandatory for all trainers. It will only cover you as the trainer of the horse(s) and only at New Jersey pari-mutuel race tracks (Freehold Raceway, Garden State Park, and the Meadowlands) or while participating in the New Jersey Sire Stakes during the fair dates.
>
> This coverage will only be good during the licensing year in which it is issued and is separate from any other coverage you may obtain from Rhulen [3] or any other insurance broker.

---

[2] The notice defines trainer as *"Trainer, Driver/Trainer, Owner/Trainer, Trainer/Stable Employee, etc."*

[3] Rhulen agency originally provided this special coverage. The Rhulen family, according to defense witness Thomas Faulhaber, owns Frontier Insurance Company.

Lohmeyer argues that the Frontier policy is in conflict with the workers' compensation statute because it attempts to limit the scope of coverage to specific locations and does not require any specific representation by the insured as to what concurrent and separate insurance exists. He also contends that the premium charged for the policy is not unusually low and is moot in any event because most horse owners do not carry a payroll. Percentage of payroll is the usual basis for computing the premiums. In addition, Lohmeyer relies on the holding in *Greater N.Y. Mutual Ins. Co. v. Ambrosio*, 109 *N.J.Super.* 372, 380-81, 263 *A.*2d 200 (Ch.Div.1970), concluding that where a workers' compensation policy limits coverage to a specific location but is not supplemented by concurrent coverage, the limitation is not effective and must be construed to cover all of the employer's business.

Frontier makes much of the fact that this policy was developed in conjunction with the New Jersey State Racing Commission as a means of including within the workers' compensation statute individuals who are really self-employed or independent contractors and who would thus not qualify for workers' compensation benefits. Thus, Frontier argues that this policy was limited to the locations stated on the Information Page and in the endorsement and for only the race days of the various listed "Standardbred Sire Stake Races." It contends that Lohmeyer was or should have been aware that Frontier's policy was a specialized, restricted policy not intended to cover Lohmeyer's work-related injury except at the particular sites listed in the policy and for Sire Stakes sites on designated days. Thus, Frontier argues that its policy was designed, and specifically approved by the Commissioner of Insurance, to provide the horse racing industry workers' compensation coverage for those sites and on those days for people within the industry who did not qualify for, or who were unable to obtain, traditional workers' compensation coverage.

*N.J.S.A.* 34:15–87 provides:

No policy of insurance against liability arising under this chapter shall contain any limitation of the liability of the insurer to an amount less than that payable by the assured on account of his entire liability under this chapter, and no provision of

such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location, or employment carried on by an assured unless the business, plant, location, or employment excluded by such restriction shall be concurrently separately insured or exempted as provided for in this article.

No such policy of insurance or any indorsement thereon shall insure against any liability whatsoever other than the liability of the employer for compensation under this chapter and for damages imposed by law because of personal injuries, including death at any time resulting therefrom, sustained by his employees.

No action shall be maintained for the collection of premiums on any policy violating any provision of this article. Any policy issued contrary to the provisions of this section shall be construed as incorporating the provisions herein contained. No insurer shall, in action brought upon such policy, plead in defense of such action any provision of such policy which violates any provision of this section.

■ Attempting to avoid the comprehensive thrust of *N.J.S.A.* 34:15–87, Frontier argues that its policy is excepted from the statute by its compliance with the filing provisions of *N.J.S.A.* 34:15–88, which reads as follows:

Every insurance company or mutual association which insures employers against liability either under this chapter or for damages imposed by law arising out of any other liability to employees because of personal injuries including death at any time resulting therefrom, or both, shall file with the commissioner of banking and insurance its classification of risks and premiums and rules pertaining thereto, together with the basis rates and system of merit or schedule rating applicable to such insurance which system of merit or schedule rating shall be applied as hereinafter provided. Neither classifications of risks, rules pertaining thereto, basis rates, nor system of merit or schedule rating shall take effect until the commissioner of banking and insurance shall have approved the classifications, rules, basis rates, and system of merit or schedule rating, as reasonable and adequate for the risks to which they respectively apply.

The Commissioner of Insurance may have approved classifications, rules, base rates, and a system of merit or schedule rating as "reasonable and adequate," but that does not provide an exception to the mandatory coverage requirement of *N.J.S.A.* 34:15–87. Indeed, the exemption in Section 87 is satisfied only if there is concurrent separate insurance or if some other specific exemption within article five of the workers' compensation law is met. Neither appears here. Section 88 is merely a procedural filing requirement applicable to all policies, whether specially rated or not. Moreover, neither the Racing Commission nor the Commissioner of Insurance has been delegated authority to modify the workers' compensation laws.

■ The language of the Frontier policy quoted above (*supra* at 551, 683 *A.*2d at 1171) appears to provide coverage for New Jersey workplaces, absent other insurance or self-insurance. Theιe has been no proof of such other insurance. At best the policy is ambiguous, and thus must be construed to provide the fullest coverage possible. *Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 347, 634 *A.*2d 74 (1993); *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961).

Although the trial judge was apparently impressed with background information and releases issued by the Racing Commission, as well as notices given by Frontier to its insureds, the record does not show that such notices were adequately brought to the attention of all persons intended to be covered by the workers' compensation provisions of the policy, or specifically to Lohmeyer in this case who denies awareness of any such notice. The record contains a copy of a notice that is required to be posted and maintained conspicuously in and about the employer's workplaces. In this case, the notice posted by Barretti Koock Stable stated that it "has secured the payment of compensation to his employees and their dependents in accordance with the provisions of the Employers' Liability Insurance Law, Title 34, Chapter 15, Article 5, Revised Statutes New Jersey, by insuring with the Frontier Insurance Company" for the relevant period.

■ Although the background information does indicate that the form of policy the industry developed may not have been intended to provide workers' compensation coverage for all New Jersey employees, such a narrow construction is inconsistent with the policy's own language and with recognized principles for resolving ambiguities in insurance policies. A policy which purports to provide workers' compensation coverage is governed by the workers' compensation laws and must conform with its regulatory policy. Our reading of the statutory exception in *N.J.S.A.* 34:15–88, does not clearly except Frontier from the applicability of the provisions of *N.J.S.A.* 34:15–87, nor from the provisions of the subject policy.

■ The judge's reliance upon what seemed an unusually low premium for the policy was misplaced. Both the policy and the law clearly require the Frontier policy to provide state-wide workers' compensation coverage absent a concurrent policy or self-insurance. Frontier and the racing industry remain free to re-write the policy and change the premium, but the alleged inequity of mandating coverage under a low cost policy is not a basis for rewriting the policy or *N.J.S.A.* 34:15-87.

As the record provides no indication that other insurance exists or that Barretti Koock Stable or Lohmeyer is self-insured, we hold that the policy, as written, provided workers' compensation coverage for Lohmeyer, if his accident was compensable.

Accordingly, we reverse the determination of the Law Division, and remand to it for entry of a judgment declaring that Lohmeyer was covered under the Frontier policy, and referring the matter to the Division of Workers' Compensation for further proceedings consistent herewith.