**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5284-18T2

THE TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA,

     Plaintiff-Respondent,

v.

HES TRANS INC.,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

DISTRIBUTION COOPERATIVE
NETWORK OF NEW YORK and
TRUCKING SUPPORT SERVICES,
LLC,

     Third-Party Defendants-
     Appellants.

_____

Argued November 18, 2019 – Decided December 23, 2019

Before Judges Sabatino, Sumners and Geiger.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0178-17.

Joseph Patrick Horan, II, argued the cause for appellant (Jasinksi, PC, attorneys; Peter P. Perla, Jr., and Joseph Patick Horan, on the brief).

Robert Scott Cosgrove argued the cause for respondent HES Trans Inc. (Durkin & Durkin, LLC, attorneys; Robert Scott Cosgrove, of counsel and on the brief).

Anthony Joseph Golowski, II, argued the cause for respondent The Travelers Property Casualty Company of America (Goldberg Segalla LLP, attorneys; Anthony Joseph Golowski, II, and H. Lockwood Miller, III, on the brief).

PER CURIAM

This interlocutory appeal concerns whether the Law Division is properly exercising jurisdiction over this case involving disputed workers' compensation premium obligations. On leave granted, third-party defendants Distribution Cooperative Network of New York ("DCN") and Trucking Support Services, LLC ("TSS") (collectively, "DCN/TSS") appeal the trial court's denial of their motions to dismiss this matter and require the dispute to be litigated in New York or, alternatively, in an administrative forum.

The underlying dispute concerns the employment status of truck drivers. Plaintiff, the Travelers Property Casualty Company of America ("Travelers")

contends the drivers are employees of defendant, HES Trans, Inc. ("HES"). Under New Jersey's mandatory workers' compensation coverage laws, Travelers contends it was required to issue coverage for the drivers. However, HES did not name most of the drivers as employees in its policy application with Travelers and therefore, according to Travelers, substantially underpaid its workers' compensation premiums. Travelers now seeks to recover the unpaid premiums from HES.

HES, meanwhile, contends the drivers were independent contractors, not employees, and therefore it was not required to pay for their workers' compensation insurance. HES alleges it procured these independent contractors through a contract with DCN/TSS. According to HES, DCN/TSS were supposed to ensure the drivers had all required insurance, including workers' compensation coverage.

DCN/TSS agree with HES that the drivers are independent contractors and that they were supposed to provide those drivers with workers' compensation insurance. DCN/TSS claim they attempted to do so, and they are currently litigating in New York state court a dispute about the workers' compensation premiums it allegedly paid to two other insurance providers for the drivers.

3

Centrally at issue here is whether DCN/TSS were properly joined as third-party defendants to this New Jersey action by HES, despite a forum selection clause in their contracts with HES declaring that any disputes between the parties must be resolved in New York State and under New York law. In the alternative to enforcing that clause, DCN/TSS argue, this entire case should be dismissed on summary judgment or referred to a State administrative proceeding.

For the reasons that follow, we affirm.

I.

We derive the following pertinent background from the record.

1. Travelers' Issuance of an Insurance Policy to HES through the New Jersey CRIB

In February 2012, HES, a trucking company, applied to the New Jersey Compensation Rating and Inspection Bureau ("CRIB") seeking workers' compensation insurance through the New Jersey Workers' Compensation Plan ("the Plan").[1] According to the contract between HES and DCN/TSS, "[HES] is

---

[1] "CRIB is . . . a quasi-independent, privatized instrumentality of the State of New Jersey created by the legislature and supervised by the Commissioner of Insurance." 38 N.J. Prac., Workers' Compensation Law § 6.1 (Jon L. Gelman) (3d ed. 2000); N.J.S.A. 34:15-90.1. Only insurers who are members of CRIB may write workers' compensation or employers' liability insurance. N.J.S.A. 34:15-90.1. CRIB administers the Plan, which is the means by which an

engaged in the business of trucking operations provided in part through operating agreements with fleet operators and owner operators in order for the fleet operators and owner operators to use their vehicles and drivers to provide transportation services in interstate and/or intrastate commerce for [HES's] customers."

In March 2015, CRIB designated Travelers to provide workers' compensation insurance to HES upon the expiration of HES's then-current policy on May 24, 2015.

In its application to CRIB, HES identified its covered employees as "two owners with clerical duties (Class Code 8810) and one trucking employee (Class Code 7219)."  HES estimated its expected total payroll as $220,000.  HES estimated its expected payroll for its sole trucking employee as $22,000.  According to Travelers, HES's February 2015 application did not mention any insurance procured through DCN/TSS.

2. HES Contracts with DCN/TSS

Between July and August 2015, HES entered into two separate contracts with TSS and DCN.  Although there were separate contracts, DCN/TSS appear

---

employer who cannot obtain workers' compensation insurance in the voluntary market may satisfy its statutory obligation to secure coverage or self-insure.

to work in tandem as a trucking cooperative and third-party administrator, respectively. They are represented by the same counsel in this litigation.

Robert Lefebvre, the General Manager of DCN and the President of TSS, certified that HES entered into the contracts with DCN/TSS to provide HES with truckers who would operate as "independent contractors" and who would not need to be treated as employees for workers' compensation purposes. Each contract included language declaring that the truckers provided to HES would not be considered employees of HES.

Notably for this jurisdictional appeal, the agreements between HES and DCN/TSS each included a combined choice of law and forum selection clause:

> Choice of Law. This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of <u>New York</u> and in the event of any disagreement or litigation, the laws of this state shall apply and <u>suit must be brought in this state</u>.
>
> [(Emphasis added).]

Each contract also specified that either DCN or TSS would provide certain insurance coverage to the truckers hired under the agreement. HES's contract with DCN specified that: "DCN shall also make available to such Members,[2]

---

[2] The contract states that Members are "Independent transportation vendors . . . who operate owned and leased vehicles available to the general public to

insurance coverage that may include, but is not limited to, workers' compensation insurance. . . ." Similarly, HES's contract with TSS states that TSS "shall make available to those OWNER OPERATORS[3] provided to [HES], insurance coverage that may include, but is not limited to, workers' compensation insurance . . . ."

DCN/TSS claim they paid a separate corporate entity in New York State to provide coverage for the drivers. According to Lefebvre's certification, TSS contracted with an entity known as "HR Connect Employment Solutions, Inc." ("HR Connect") to find insurance for the hired truckers. A company called "Midwest Risk" was designated as "HR Connect's WC claims administrator." In their appendix on appeal, DCN/TSS provide three certificates of insurance, each of which names HES as the "certificate holder" of the insurance policy.

In January 2019, DCN/TSS filed a lawsuit against HR Connect and Midwest Risk in New York State arising out of these insurance arrangements. According to the New York complaint, DCN/TSS contracted with HR Connect

---

transport goods on a for hire basis." DCN states that its purpose is to provide Members to other parties, like HES.

[3] The contract states that TSS is a "third party administrator for the Equipment and driver services" under the contract, and that owner operators are not employees of either HES or TSS.

and Midwest Risk to provider workers' compensation insurance for truckers ("Members") in New York and New Jersey, paying a total of $534,337.45 in premiums. They allege HR Connect and Midwest Risk failed to provide insurance for certain "Members of TSS," and DCN/TSS learned of the issue when they "submitted certificates of insurance that had been provided by [HR Connect] in the State of New Jersey [that] were rejected as invalid." That New York litigation is apparently still ongoing.

3. Travelers' Audit of HES and This Ensuing Litigation

Beginning in July 2015, Travelers discovered that HES' operations appeared to be much greater than suggested in their application and payroll materials provided to CRIB. Travelers conducted a preliminary audit, apparently using documentation provided by HES, and determined HES's estimated payroll was $2,796,072 for employees classified as "Truckmen" and $470,253 for employees classified as "clerical." [4] This payroll was

---

[4] The auditing process is formally part of CRIB workers' compensation regulations. See New Jersey Workers' Compensation and Employers Liability Insurance Manual ("Workers' Compensation Manual"), § 3:3-13, https://www.njcrib.com/Search/ViewPDFByName?documentTitle=Manual&share=Manual&extension=pdf (describing the audit requirement and process). Travelers also notes the auditing process was described in the policy contract issued to HES. There do not appear to be any equivalent or additional regulations governing the calculation of workers' compensation insurance codified in the New Jersey Administrative Code, and none are cited to us.

approximately one hundred times the payroll that HES had disclosed on its policy application.

At the request of HES, its coverage with Travelers was cancelled, effective March 17, 2016. Thereafter, Travelers conducted a final audit and determined the actual payroll during the policy period was $2,454,354 for "Truckmen" and $417,938 for "clerical" employees. Travelers' determined HES owed an additional premium for the covered year totaling $532,198. HES apparently paid revised premiums for certain clerical employees and certain truckers under the "Hired Vehicle Rule," but contested insurance premiums for drivers they contend were allegedly supplied (and insured) by DCN/TSS.

In February 2017, Travelers filed the present case in the Law Division against HES seeking payment of the contested premium. HES, in turn, named DCN/TSS as third-party defendants.

DCN/TSS moved to dismiss the third-party complaint for lack of jurisdiction. DCN/TSS argued that the forum selection clause contained in their contracts with HES required their dispute to be litigated in New York, not New Jersey. Alternatively, DCN/TSS argued that if the matter remained in New Jersey, it should be referred to CRIB under the doctrine of primary jurisdiction.

The trial court denied the dismissal motion of DCN/TSS on two grounds. First, it ruled that strong public policies underlying New Jersey's entire controversy doctrine and workers' compensation scheme weighed against allowing parallel litigation in New York. The court also declined to refer the case to CRIB. In addition, the court denied motions for summary judgment made by several of the parties.

This court then granted DCN/TSS leave to appeal, but "limited to the trial court's forum selection and jurisdictional rulings."

II.

A reviewing court "'appl[ies] a plenary standard of review from a trial court's decision to grant a motion to dismiss.'" Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012) (quoting Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)). The applicability of a forum selection clause, like any other question of law under a motion to dismiss, is reviewed de novo. See Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 605 (App. Div. 2011).

DCN/TSS argue the trial court erred in denying the motion to dismiss on the grounds that application of the forum selection clause would violate New Jersey public policy under its workers' compensation laws and the entire

controversy doctrine. They contend there are no valid public policy grounds on which to invalidate the validly-executed forum selection clause reached by the third-party defendants and HES.

Under both New Jersey and federal law, jurisdictional clauses in contractual agreements are considered presumptively valid and enforceable. In New Jersey, such provisions are enforceable absent fraud, strong countervailing public policy, or if it would "seriously inconvenience trial." Danka Funding Co., LLC v. Sky City Casino, 329 N.J. Super. 357, 363 (Law. Div. 1999); see also Caspi v. Microsoft Network L.L.C., 323 N.J. Super. 118, 122 (App. Div. 1999).

There is no allegation nor evidence of fraud or duress in the creation of the contracts between HES and DCN/TSS, including the inclusion of the forum selection clause.

Moreover, to find a forum selection clause unenforceable on the basis of unequal bargaining power, "[a] court's focus must be whether such an imbalance in size resulted in an inequality of bargaining power that was unfairly exploited by the more powerful party." Caspi, 323 N.J. Super. at 123. In the present case, HES, DCN, and TSS are all apparently sophisticated businesses that regularly

enter into similar contracts. Hence, there is no apparent disparity of bargaining power.

There is also no threat of "serious inconvenience" to trial. This exception is "reserved for the situation where trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of his day in court." Copelco Capital, Inc. v. Shapiro, 331 N.J. Super. 1, 4 (App. Div. 2000) (citation omitted). The inconvenience in litigating in New York instead of New Jersey is negligible, particularly where, as here, all the parties involved are sophisticated commercial actors.

With these concerns aside, the key question before us is whether the forum selection clause requires this case to be litigated in New York, or whether such action would be contrary to New Jersey public policy.

In the initial hearing denying the motion to dismiss, the trial court rested its decision in part on the "the public policy that effectuates the legislative scheme of insuring Workers' Compensation benefits" and on N.J.S.A. 34:15-87. Travelers contends this public policy rationale was appropriate. It argues the forum selection clause was properly not enforced by the trial court, in order to "effectuate[] the legislative scheme of insuring Workmen's Compensation benefits." HES concurs with this reasoning.

A-5284-18T2

In opposition, DCN/TSS assert this is a simple contractual dispute and does not implicate or "imperil[]" the workers' compensation scheme. Hence, DCN/TSS maintain there are no public policy grounds to invalidate the forum selection clause.

The statutory scheme provides important context. With limited exceptions, every New Jersey employer must "make sufficient provision for the complete payment of any obligation which he may incur to an injured employee" or the employee's dependents. N.J.S.A. 34:15-71. An employer must make "sufficient provision" for any liabilities arising under the act. N.J.S.A. 34:15-72. However, mandatory coverage only applies to employees, not "those who perform work as independent contractors." 20 <u>N.J. Prac., Skills And Methods</u> § 11:22 (rev. 3d ed. 2005)

N.J.S.A. 34:15–87, the pertinent statutory provision cited by Travelers and the trial court, states:

> <u>No policy of insurance against liability arising under this chapter shall contain any limitation of the liability of the insurer to an amount less than that payable by the assured on account of his entire liability under this chapter</u>, and no provision of such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location, or employment carried on by an assured unless the business, plant, location, or employment excluded by such restriction shall be

concurrently separately insured or exempted as provided for in this article.

No such policy of insurance or any indorsement thereon shall insure against any liability whatsoever other than the liability of the employer for compensation under this chapter and for damages imposed by law because of personal injuries, including death at any time resulting therefrom, sustained by his employees.

No action shall be maintained for the collection of premiums on any policy violating any provision of this article. <u>Any policy issued contrary to the provisions of this section shall be construed as incorporating the provisions herein contained</u>. No insurer shall, in action brought upon such policy, plead in defense of such action any provision of such policy which violates any provision of this section.

[N.J.S.A. 34:15-87 (emphasis added).]

The purpose of this statutory provision is to codify "mandatory" and comprehensive workers' compensation insurance for New Jersey employers, and, with limited exceptions, to reject any workers' compensation insurance policy that would limit an employer's liability under the workers' compensation scheme. See Lohmeyer v. Frontier Ins. Co., 294 N.J. Super. 547, 555-56 (App. Div. 1996) (describing the "mandatory coverage requirement of N.J.S.A. 34:15–87" and noting "[an insurance] policy which purports to provide workers'

compensation coverage is governed by the workers' compensation laws and must conform with its regulatory policy").

The statute requires an employer to insure all of its workers' compensation liabilities and invalidates any insurance policies that fail to do so.  A failure to provide workers' compensation protections under the statutory scheme, or a deliberate misrepresentation of employees as independent contractors to avoid providing coverage, can subject an employer to criminal liability.  N.J.S.A. 34:15-79(a).

The trial court properly concluded these facets of our State's workers' compensation laws embody a strong public policy preference to litigate disputes over workers compensation coverage and premiums in this jurisdiction.  As we were advised by counsel at oral argument on appeal, the terminal of HES is located in Passaic County.  In addition, a number of the truck drivers engaged by HES are apparently residents of this State.  There is a significant nexus to this State that justifies keeping the lawsuit here, including the third-party complaint.

We therefore affirm the court's decision on public policy grounds.  Having done so, we need not rely on entire controversy principles to achieve the same result, although we note in passing that the trial court rightly expressed concerns

A-5284-18T2

about duplicative litigation in New Jersey and New York and the possibility of inconsistent factual or legal determinations respecting these parties.

Lastly, we reject the alternate argument of DCN/TSS that this matter should be referred to CRIB and somehow adjudicated as a contested administrative case. We recognize CRIB has an informal dispute resolution process. However, that process only applies to an appeal from determinations or rulings made by a Division of the Ratings Bureau. Workers' Compensation Manual, § 3:1-2; see also N.J.S.A. 34:15-90.2(k) (authorizing CRIB to "[r]esolve disputes concerning the application of its rating system to specific cases, in accordance with the workers' compensation and employers' liability insurance policy and the bureau's rules of procedure, subject to appeal to the commissioner."). There was no determination or ruling made by the Ratings Bureau in this case. Travelers has filed suit based upon its own audit of HES and is not relying upon a CRIB "determination or ruling." In addition, Rule 11 of Part Three, Section One of the New Jersey Workers Compensation and Employers Liability Manual specifies that the CRIB informal settlement process is only available before litigation has been commenced. Workers' Compensation

Manual, § 3:1-2. Here, Travelers already has filed suit in the Superior Court, where jurisdiction now properly lies.[5]

For these reasons, the trial court's denial of the motion to dismiss the third-party complaint against DCN/TSS is affirmed. The matter is remanded to the Law Division. On remand, DCN/TSS are free to move before the trial court to sever or stay the third-party complaint, pending the outcome of Travelers' main claims against HES, and the issuance of a final judgment that presumptively would be entitled to full faith and credit elsewhere. The trial court has the discretion to decide whether such action would be appropriate, taking into account discovery needs, the need for witness testimony, and other practical considerations. We intimate no views on whether a stay or severance would be warranted and, if so, upon what terms and conditions.[6]

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Because we uphold the trial court's exercise of jurisdiction, we need not address on this appeal issues concerning whether CRIB has the status of an administrative agency or whether its manual or guidelines have been appropriately promulgated.

[6] After oral argument on the appeal, the parties submitted supplemental letters with suggestions about such terms and conditions but did not agree on all aspects. Counsel shall furnish those letters to the trial court for its background and consideration.

A-5284-18T2