280 N.J. Super. 601 (1995)
656 A.2d 58
AMERICAN EMPLOYERS' INSURANCE COMPANY AND COMMERCIAL UNION INSURANCE COMPANY (AS SUCCESSOR TO CERTAIN OBLIGATIONS OF EMPLOYERS' SURPLUS LINES INSURANCE COMPANY AND EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD.), PLAINTIFFS-APPELLANTS,
v.
ELF ATOCHEM NORTH AMERICA, INC., PENNWALT CORPORATION AND ITS SUCCESSORS AND ASSIGNS, DEFENDANTS-RESPONDENTS, AND THE TRAVELERS INDEMNITY COMPANY, INTERNATIONAL INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON AND CERTAIN COMPANIES IN THE LONDON INSURANCE MARKET, DEFENDANTS-APPELLANTS,[1] AND THE AETNA CASUALTY AND SURETY COMPANY, ALLIANZ UNDERWRITERS INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, AS SUCCESSOR TO NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, FORMERLY NORTHBROOK INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, CALIFORNIA UNION INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, THE CONTINENTAL INSURANCE COMPANY, EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY, FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, THE HOME INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, THE NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, NORTH STAR REINSURANCE CORPORATION, ZURICH INSURANCE COMPANY, AND JOHN DOES ONE THROUGH TWO HUNDRED, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1995.
Decided April 11, 1995.
*604 Before Judges DREIER, WEFING and BRAITHWAITE.
James W. Christie argued the cause for appellant American Employers' Insurance Company (Christie, Pabarue, Mortensen & Young, attorneys; James A.A. Pabarue, Brian C. Vance and Maria E. Matteo, of counsel and on the briefs).
David J. Woll, admitted pro hac vice, argued the cause for appellant The Travelers Indemnity Company (Ribis, Graham & Curtin, attorneys; Barry R. Ostrager, pro hac vice & Mr. Woll, of counsel, Joseph R. McDonough, on the brief).
William McGuire argued the cause for appellant Certain Underwriters at Lloyd's London and Certain Companies in the London Insurance Market (Tompkins, McGuire & Wachenfeld, attorneys; Martin R. Baach, Mark J. Leimkuhler and Susan M. Guindi, on the brief).
Gregory G. Tole argued the cause for appellants International Insurance Company and North River Insurance Company (Robinson, St. John & Wayne, attorneys; Mr. Tole, on the brief).
Eugene R. Anderson argued the cause for respondent Elf Atochem North America, Inc. (Anderson, Kill, Olick & Oshinsky, attorneys; Mr. Anderson, Paul E. Breene and Jean M. Farrell, on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiffs and certain of the defendant insurance companies appeal on leave granted in these consolidated cases from an order *605 dissolving a temporary restraining order and denying a preliminary and permanent injunction prohibiting parallel litigation in Texas. Plaintiffs had instituted a declaratory judgment action in New Jersey against their insured and other carriers to determine their respective insurance coverages for various multi-state environmental and toxic tort claims against the insured.
In 1987, defendants Elf Atochem North America, Inc. and Pennwalt Corporation (collectively, Elf Atochem)[2] notified plaintiffs of an environmental claim against them for alleged liabilities for the company's Dunlap Towing site in the State of Washington. Over the next two years, plaintiffs were notified of additional claims concerning thirty-six sites in fourteen states. The number of sites and jurisdictions has since grown to sixty-six sites in nineteen states. Plaintiffs requested information from defendant concerning the claims. On January 16, 1991, defendant gave notice of substantial private party environmental claims concerning its Bryan, Texas plant. The claims were brought by people who lived or worked in the area of the Bryan plant for exposure to arsenic and other substances causing bodily injury and property damage.
The private party claims relative to the Bryan site evolved into seventeen lawsuits including a 30,000 member certified class action (Hayden v. Elf Atochem North Am., Inc., C.A. No. H-92-1054 (U.S.D.C., S.D.Tex.; Houston Div. 1992)). At a mediation session, plaintiffs learned that defendant thought it was in "poor shape from a liability perspective." Defendant later advised plaintiffs that another group of approximately twelve Bryan claimants were demanding substantial additional money.
On or about August 23, 1994, defendant gave plaintiffs and the other insurers global settlement and individual demands which have been supplemented as the Texas cases progressed.[3] The insurers were given less than a week to accept defendant's initial *606 $23,000,000 demand, and defendant asked for standstill agreements with promises not to file suit against defendant. Plaintiffs did not agree.
Defendant indicated in a letter dated June 27, 1991 that the primary coverage was exhausted for certain years, and on August 23, 1994, defendant told plaintiffs that its primary coverage was completely exhausted as to the Bryan claims, and it was going to attempt to negotiate a settlement.[4]
On August 29, 1994, plaintiffs instituted this New Jersey action against defendant and more than two dozen defendant insurance companies which, like plaintiffs, had issued comprehensive general liability insurance policies to defendant. The declaratory judgment action sought a declaration in one forum of the parties' rights and responsibilities under the insurance policies for claims against defendant in various states. The New Jersey action involves all of the sixty-six sites in nineteen states, with a potential liability of hundreds of millions of dollars. One of the sites covered by the suit includes the claims at Bryan, Texas.
During September 1994, defendant reached the tentative settlement agreements noted earlier with all pending Bryan claimants, some of whom would share in defendant's insurance recoveries, and on September 21, plaintiffs were informed of the pending settlements. The Hayden class action settlement is still awaiting the approval of the Federal District Court, and there may be some individual claims still open.
*607 Defendant filed the Texas insurance coverage action on October 12, 1994, five weeks after the New Jersey action was instituted, seeking a declaration of insurance policy rights and obligations as it pertained to the Bryan, Texas site. (Defendant is also seeking statutory, common law and contractual relief and punitive damages against the insurers because of bad faith, fraud and violation of the Texas Unfair Claims Handling Practices Act). Defendant claims that the Texas action was brought in Harrison County, Texas, 200 miles from Bryan, because a site-specific claim can be tried there in less than two years of filing, where there would be a much longer delay in Brazos County, where Bryan is located.[5]
Plaintiffs obtained an ex parte temporary restraining order from the New Jersey trial judge on November 4, 1994, enjoining defendant from proceeding with the Texas action. Defendant and the Bryan plaintiffs then claimed that enjoining the Texas action would endanger the proposed settlements since the acceptance of the settlements was based on the insurance coverage litigation occurring in a Texas court. They, therefore, moved to vacate the temporary restraining order.
Travelers Indemnity Company and the other non-plaintiff insurers were not served before the hearing on vacating the TRO, but the judge thought it was reasonable that only the moving party was served. Travelers' attorney, however, attended the November 10 hearing, but he was unprepared to argue the merits of defendant's claim to vacate the TRO. After arguments at the nonevidentiary hearing of November 10, 1994, the judge on November *608 11 telephoned the parties with his decision to dissolve the TRO and deny plaintiffs' request for a permanent injunction. After the trial judge denied a stay, this court granted a stay of the November 11, 1994 order, to remain in effect until a motion for leave to appeal was either denied or, if granted, until the appeal was concluded, and plaintiffs were directed to file a motion for leave to appeal.
On November 15, 1994, the trial judge issued a comprehensive letter opinion setting forth the basis for his prior decision. While acknowledging the rule in Westinghouse v. Liberty Mut. Ins. Co., 233 N.J. Super. 463, 559 A.2d 435 (App.Div. 1989) that "there should be one comprehensive action to resolve the coverage questions raised by the insured [or insurer] for various sites ...," the judge determined that this case was an exception because of special circumstances. He found that plaintiffs were guilty of forum shopping by choosing to pursue their action in New Jersey when they knew the out-of-state sites would be litigated after the New Jersey sites and that "rushing" into a New Jersey court would "forestall the immediate settlement negotiations."[6]
Although during the hearing the judge indicated he would not accept the affidavits of the Texas claimants' attorneys as proof of the necessity for the action in Texas, the judge relied on these same affidavits when he found that the New Jersey action placed defendant in an "extremely difficult position in regard to settlement negotiations with some of the various Texas cases." He also relied on their affidavits in assuming that there would be a speedier resolution for the Bryan plaintiffs if the Texas action proceeded. The rest of the multi-state sites, including another site in Texas and the Texas governmental claims for site clean-up costs were all to remain in the New Jersey action.
On December 16, 1994 we granted leave to appeal to plaintiffs, and then to defendants Travelers, International Insurance Company *609 and North River Insurance Company. On February 16, 1995 we similarly granted leave to appeal nunc pro tunc to the London group of insurers. We ordered an expedited briefing schedule and hearing.
Plaintiffs claim that the court incorrectly failed to follow the "first to file rule." While the court has discretion, the general rule is that "the court which first acquires jurisdiction has precedence in the absence of special equities." Yancoskie v. Delaware River Port Authority, 78 N.J. 321, 324, 395 A.2d 192 (1978).[7] Defendant, of course, claims that the special circumstances of the pending settlements justify the severance of the Bryan action even though it was filed after the New Jersey action.
There is clear New Jersey precedent to enforce the first to file rule. In Applestein v. United Board & Carton Corp., 35 N.J. 343, 346, 173 A.2d 225 (1961), a New Jersey resident and minority shareholder in defendant brought a class action suit in the Chancery Division to prevent an intercorporate agreement for the exchange of stock from taking effect. The defendants were enjoined from carrying out the agreement. Id. at 347, 173 A.2d 225. Two weeks later, the same plaintiff, seeking monetary damages, instituted a derivative stockholder action in the New York Supreme Court. Id. at 348, 173 A.2d 225. Defendants applied to the New Jersey court for a restraining order against plaintiff proceeding with the New York suit, but the trial court denied the motion because the controversies and objects in each case were different, the relief sought was different, and the partial summary judgment had terminated the New Jersey proceeding. Id. at 348-49, 173 A.2d 225.
*610 The Supreme Court determined that "[i]t is beyond doubt that a court of equity has the power to restrain a party over which it has personal jurisdiction from prosecuting judicial proceedings in another state." Id. at 349, 173 A.2d 225 (citing Trustees of Princeton University v. Trust Co. of N.J., 22 N.J. 587, 598, 127 A.2d 19 (1956)). This is done in order to "render complete and final justice, ... and to protect parties from the vexation and oppression of litigating the same controversy in different states" in a controversy over which the court had prior jurisdiction. 35 N.J. at 349, 173 A.2d 225 (citations omitted).
In that anti-suit injunction case, there were but two questions to be answered: "(1) Is there litigation pending in New Jersey, and, (2) if so, does it encompass or should it encompass the subject matter of the New York action?" Id. at 350, 173 A.2d 225. The answers were both affirmative.
We see similar answers to the two questions posed by Applestein in the case before us: (1) there is a case pending in New Jersey, and (2) if Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J. Super. 463, 559 A.2d 435 (1989) (discussed later) is followed, the subject matter of the Texas action would be encompassed in the New Jersey action. Beyond these inquiries, Applestein does not require a further analysis of prejudice to either party as is required in other actions seeking an injunction. However, the prejudice of litigating in two forums is obvious. As plaintiffs assert, litigating the same issues in two jurisdictions involves a duplication of effort and excessive expense, and there is a chance of inconsistent rulings. Except as stated, the court's considerations when passing upon an anti-suit injunction should not be substantially different than for any other injunction,[8] and *611 the parties ordinarily should be allowed to explain more fully to the trial judge the claim of irreparable harm they would suffer and the opposition thereto. Had there not been a complete hearing before us on the issue, we would remand this matter for the originally scheduled hearing on the injunction.
Defendant had asserted irreparable harm if the Bryan settlements collapse. Yet from all current information, the settlements are firm and will not be lost. Furthermore, the Bryan site is only one of sixty-six sites, and no explanation is given why this settlement is more important than settlements for any other sites. Under defendant's theory, as each set of claims nears settlement, that state's portion of this suit could be severed in favor of coverage litigation in that state.
Defendant also claims that judicial estoppel prevents plaintiffs from arguing for an anti-suit injunction since plaintiffs took the opposite position in Peabody Int'l Corp. v. Commercial Union Ins. Co., No. 87-C-00242 (N.J. Super.Ch.Div.). "Although a party may argue inconsistent principles of law, he cannot be heard here to contend for two diametrically opposed set of facts." In re Estate of Perrone, 5 N.J. 514, 527, 76 A.2d 518 (1950). Although the facts may be similar in Peabody and the present case, the former was one in which there was not a different factual position but a different legal position based on the law at that time. Peabody was argued in 1988 before our decision in Westinghouse, supra. Plaintiffs claim that they argued consistently with the law in 1988 and argue now consistent with the law after Westinghouse. The argument was also used against Travelers concerning its position in an earlier Massachusetts case. Travelers, like plaintiffs, is not bound by its prior inconsistent position.
Plaintiffs assert that the judge incorrectly made an unwarranted exception to judicial precedent when he determined that the Texas action could be severed from the declaratory judgment *612 claims in New Jersey. In Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., supra, the insured brought a declaratory judgment action to determine coverage for environmental and personal injury claims. There were 144 insurers, 300 policies, 3,000 personal and environmental claims concerning eighty-one sites in twenty-three states, with nine sites in New Jersey. Id. at 465-466, 559 A.2d 435. Rather than using the concept of forum non conveniens, which considers the appropriateness of the choice of forum, this court considered the question
whether, under all the relevant circumstances and upon a balancing of all the competing public and private interests implicated, the benefits of fractionalizing this litigation, not only into multiple separate parts but also into separate parts sharing a significantly duplicative overlay, so outweigh the private and public burdens which fractionalization inevitably imposes as to justify the involuntary contraction and truncation of this litigation on any theory. We think it does not....
[Id. at 470, 559 A.2d 435].
Judge Pressler explained:
This kind of fractionalization is a most potent weapon in the arsenal of the litigant whose primary subversive aim is to impose both upon the judicial system and the adversary by endlessly delaying the day upon which the entire controversy will finally come to an end and the respective rights of the litigants resolved  clearly, consistently, and finally. It is only the single comprehensive action, designed to adjudicate the entire controversy between litigants, which can protect both the court and the parties from that calculated imposition.
[Id. at 470-471, 559 A.2d 435.]
The court further relied on New Jersey's entire controversy doctrine and federal case law. Id. at 471-75, 559 A.2d 435 (and cases there cited).
Westinghouse and the present case should not be distinguished because in Westinghouse the insured was the plaintiff, and the insurer is the plaintiff in this case. The same principles apply. The trial judge here acknowledged the precedent of Westinghouse but determined that special circumstances existed that made the Texas action an exception. As noted earlier, the judge found forum shopping by plaintiff in initiating its declaratory judgment action in New Jersey when the Bryan claimants were in the *613 process of settling. He also found that the pending settlement in the Bryan case was threatened if the Texas action did not proceed.
The judge, however, failed to give proper weight to the slight benefits and many burdens of fractionalizing this litigation, in part because his decision was premature. The judge had before him only the affidavits of the attorneys for the underlying Bryan claims to substantiate that the settlements would be threatened if the declaratory judgment action for that site was heard in New Jersey. The settlement papers were not in evidence. There was insufficient proof of a real hardship, and this deficiency would have been clear had the underlying documents been presented.
There was also insufficient proof before the judge concerning whether there actually was improper forum shopping by plaintiff. It was assumed that plaintiffs rushed to New Jersey with their declaratory judgment action more or less to sabotage the Bryan settlement negotiations. Forum shopping
occurs when a party attempts to have his action tried in a particular court or jurisdiction where he feels he will receive the most favorable judgment or verdict.
[Black's Law Dictionary 655 (6th ed. 1990).]
Generally, however, the plaintiff has a choice of any forum where there is appropriate jurisdiction over the defendant. Where the parties have agreed upon a forum, their choice will usually be honored. "[A]ctions based on contract ... appear to be allowed to proceed to trial in the chosen forum, except in the most exceptional of circumstances, even where the relationship of the action and of the parties to the State is tenuous." Amercoat Corp. v. Reagent Chem. & Research, Inc., 108 N.J. Super. 331, 347, 261 A.2d 380 (App.Div. 1970). Otherwise, it is only for "a clear showing of hardship or for some other compelling reason" that the court will deny a plaintiff its choice of forum. Civic Southern Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974). "The choice of forum must be demonstrably inappropriate." Ibid. See also Starr v. Berry, 25 N.J. 573, 584, 587, 138 A.2d 44 (1958).
New Jersey has jurisdiction. This State has a substantial interest, considering that there are more pollution sites here than *614 any other state, although they may or may not involve personal injuries, and two of the sites are in Union County, the chosen venue. Some of the defendant insurers are incorporated or headquartered in New Jersey, and defendant is headquartered in nearby Philadelphia. It is certainly a convenient place for many of the potential witnesses. Such factors also lessen the case for accusing plaintiffs of an improper choice of forum, although we find little evidence in the record to support the claim, and plaintiffs had little opportunity to counter the claim. As we have noted, there actually may be more of an indication of forum shopping (or more accurately venue shopping) by defendant in choosing Harrison County, which is 200 miles from Bryan, to bring the declaratory judgment action when Brazos County, where Bryan is located, has approximately the same percentage of cases disposed of in approximately the same amount of time. Unclean hands by any of the parties, however, is unsubstantiated at this time.
It was also speculative that the case would take much longer in Union County than the two years projected for a Texas judgment. There is no firm evidence that hearing the case in Union County would take longer than in Harrison County, Texas especially if the Bryan, Texas case is taken first. The Bryan claims of course would take longer to be determined if the New Jersey court were to consider the New Jersey sites first. The judge referred to his case management order in another case wherein he determined to give discovery and trial preference to cases involving New Jersey sites. For an appropriate case, this would be a logical procedural decision, but it can be modified or negated as required. Declaratory judgment cases and the underlying environmental claims "demand special attention" and flexible case management. Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 477-78, 650 A.2d 974 (1994).
While the issue even now remains within the trial court's discretion, we suggest that this discretion might well be exercised by considering the Bryan site and perhaps any other personal *615 injury cases first. Settling or adjudicating personal injury claims promptly may be more important than initially treating the general New Jersey environmental claims. Additionally, we note that plaintiffs do not object to the court treating the Bryan claims first. But this decision must await a factual presentation to the judge.
The case is before a judge experienced in complex toxic tort litigation, who has already recognized the need for a prompt disposition of the Texas personal injury claims. If time constraints demand, the judge can apply to the assignment judge for a discovery master. The parties could also seek acceleration of the claims or any part of them through channels of alternative dispute resolution.
Since there is a presumption in favor of plaintiffs' choice of forum, the judge should have retained jurisdiction over the entire case unless there was, or as the case progresses, may be a real showing of hardship.
The choice of law question should also not be an impediment to the case remaining totally in New Jersey. In Westinghouse, supra, the case was made more complex because there were many states involved in the various claims. The choice of law question, however, was not determined since it was not at issue in the appeal. While not determining which state law should govern, the court there did require that one state's law should govern, be it where the contracts were negotiated, issued or performed or the principal locations of the parties. 233 N.J. Super. at 475-78, 559 A.2d 435. The Supreme Court, however, in Gilbert Spruance Co. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 134 N.J. 96, 111-112, 114, 629 A.2d 885 (1993) rejected the "uniform-contract-interpretation" approach of Westinghouse in favor of the "site specific" approach, adopting Restatement (Second) of Conflict of Laws § 193 (1971). Section 193 states:
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more *616 significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
The New Jersey court would thus apply Texas law to the Bryan claims so the importance of trying the case in Texas is further lessened.
Travelers contends that it and the other defendant-insurers did not receive notice of the November 10, 1994 hearing to dissolve the TRO. "At a minimum, due process requires notice and an opportunity to be heard `appropriate to the nature of the case.'" McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 558, 626 A.2d 425 (1993) (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)). The parties must have the time to prepare a response before they are heard. Nicoletta v. North Jersey District Water Supply Comm'n, 77 N.J. 145, 162, 390 A.2d 90 (1978). Although Travelers and the London group were present at the hearing, they did not have an opportunity to review defendant's argument nor to respond to an issue vital to their interests. More important than the dissolution of the TRO, the judge at that hearing decided, without a scheduled hearing, that he would not issue a permanent injunction.
Since the New Jersey Rules require joinder of parties, R. 4:28-1, all parties should have been noticed and had the opportunity to be heard on those issues that affect their vital interests. However, as we are reversing the order dissolving the TRO, this issue is moot.
We stress that the trial judge retains discretion, in appropriate situations, to release particular claims to other forums. We, therefore, do not disagree with his assessment of his jurisdiction to do so. Our disagreement is solely that the circumstances of this case on the facts as they are now known do not warrant the duplicative litigation in Texas. Unfortunately, the decision was rendered in the trial court before all of the parties could make a full presentation of their positions. As we have had the benefit of briefing and argument, we vacate the order rescinding the TRO *617 and remand this matter to the Law Division for the entry of an injunction precluding the Harrison County, Texas action from proceeding. We do not retain jurisdiction.
NOTES
[1] These named defendants joined plaintiffs in this appeal.
[2] For purposes of this opinion, "defendant" will refer to Elf Atochem. Defendant-appellants will be referred to by name.
[3] Pursuant to court order, specific settlement demands or amounts were not included by the parties in the record. It had been estimated that the settlement demands were as high as $700,000,000-$1,000,000,000.
[4] Plaintiffs claimed that unknown to them, defendant was trying to settle with the Bryan claimants, by offering a partial assignment of defendant's insurance proceeds. The Bryan cases now appear to be settling for a total of approximately $170,000,000. An article from the Dallas Morning News of January 13, 1995, included in the record, claimed that the families of thirteen children settled for more than $100,000,000. At oral argument, defendant referred to this claim as the Jamail claim which has actually settled for $110,000,000. We were also told that the Essmyer settlement is $3,900,000 and the Hayden class action settlement, if approved, is $56,000,000. These are the three principal Bryan settlements. (The first two claims are referred to by the shorthand reference to the attorneys handling the claims). We denied plaintiffs' application to supplement the record with an additional news article about the Bryan settlements, leaving it to plaintiffs to establish the facts therein by competent proof, if they are later relevant to the proceedings. We have, however, accepted plaintiffs' representation that the $170,000,000 figure is a rough approximation of the value of these particular settled cases.
[5] According to the Texas Judicial System Annual Report 1993, which the trial judge did not have before him, in Brazos County there were 529 cases disposed of that were less than three months old and 106 cases over eighteen months old out of a total of 1,435 cases. In Harrison County, there were 805 cases disposed of that were less than three months old and 110 cases over eighteen months old out of a total of 1,643 cases. There was little, if any, statistical evidence of a real difference in delay between the two counties. At oral argument before us, defendant's attorney explained that the judge in Harrison County had disposed of a substantial environmental case in a short period, and defendant hoped she could do so in this case.
[6] By hindsight, we see that the judge's concern about the settlement negotiations was unnecessary. We will treat his other concerns, infra.
[7] The "first to file rule" or any other rules of jurisdiction are not affected by the Service of Suit clause in the London group's agreement with defendant. In Price v. Brown Group, Inc., 206 A.D.2d 195, 619 N.Y.S.2d 414, 416-418 (1994), the court determined that the London group's clause meant that the insurers were subject to the various forums of the United States, not to the forum dictated solely by the insured's selection.
[8] Injunctions are usually only granted when without them there would be irreparable harm and money damages would not adequately redress the harm. Crowe v. De Gioia, 90 N.J. 126, 132-33, 447 A.2d 173 (1982). Other principles to be addressed are whether the legal right on the underlying claim is unsettled, whether material facts are controverted and the "relative hardship to the parties." Id. at 133-34, 447 A.2d 173. Additionally, there must be clear and convincing proof in order to grant an injunction. Dolan v. DeCapua, 16 N.J. 599, 614, 109 A.2d 615 (1954).