948 A.2d 1285

CHUBB CUSTOM INSURANCE COMPANY, FEDERAL INSUR-
ANCE COMPANY AND EXECUTIVE RISK INDEMNITY, INC.,
PLAINTIFFS–RESPONDENTS, v. THE PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA, PRUDENTIAL FINANCIAL,
INC. AND PRUDENTIAL EQUITY GROUP, LLC, DEFEN-
DANTS–APPELLANTS.

Argued April 7, 2008—Decided June 26, 2008.

*David L. Menzel* argued the cause for appellants (*Cuyler Burk,* attorneys; *Mr. Menzel* and *Stephen D. Cuyler,* of counsel; *Mr. Menzel* and *Tanya M. Mascarich,* on the briefs).

*Christopher T. Handman,* a member of the District of Columbia Bar, argued the cause for respondents (*Belsole & Kurnos,* attorneys; *Roy E. Kurnos,* on the briefs).

Justice LONG delivered the opinion of the Court.

At issue in this appeal is the meaning of a service of suit clause in an insurance policy. In particular, an insured argues that such a provision operates effectively as a forum selection clause, affording it absolute hegemony over the question of the jurisdiction in which any coverage dispute is to be litigated. The trial judge agreed and ruled that the service of suit clause entitled the insured to its choice regarding forum. Thus, he dismissed the insurers' first-filed action in New Jersey in favor of the insured's later-filed Delaware suit. The Appellate Division rejected that reading of the service of suit clause, held it inapplicable where the insurer is the first to file and reversed the dismissal, decisions with which we are in concert.

We hold that a service of suit clause is an agreement by the insurer to do what is necessary to submit to personal jurisdiction in the court in which the insured has chosen to file a coverage dispute. The clause, however, does not preclude the insurer from instituting its own suit in the first instance, nor does it allow the insured to trump the insurer's first filing with a later filing of its own. Both parties remain free to seek relief from inappropriate filings under doctrines of judicial economy, including the doctrine of *forum non conveniens*.

## I.

Chubb Custom Insurance Company (Chubb) issued a professional liability insurance policy to Prudential Insurance Company of America (Prudential) effective from August 31, 1997, to August 31, 2002, with a policy limit of $50 million subject to a $25 million deductible for each loss. Pursuant to the policy, Chubb agreed to indemnify the "Parent Organization," Prudential Insurance,[1] and its subsidiaries and their directors, officers, and employees.

The policy included Endorsement 1, which is entitled "Service of Suit Clause," and which provides

[i]t is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

To cover the $50 million policy limit, Chubb participated in a quota share program with other insurers, including Federal Insurance Company and Executive Risk Indemnity, Inc. (collectively the insurers). Under that system, the insurers provided coverage in nearly equal parts. Three additional tiers of excess coverage existed involving a number of other insurers. All excess policies generally "followed the form" of Chubb's policy.

---

[1] Effective December 13, 2001, Prudential Financial, Inc. replaced Prudential Insurance as the Parent Organization under the policy.

After a trial in 2002, an Ohio court entered judgment against Prudential Securities, a subsidiary of Prudential, for the unauthorized reallocation of the assets in numerous retirement accounts. The award included compensatory damages and punitive damages. *Burns v. Prudential Sec., Inc.*, 167 *Ohio App.*3d 809, 857 *N.E.*2d 621, 628 (2006).

Prudential sought coverage from the insurers and the various excess insurers. Because the jury found that Prudential Securities had engaged in fraud, the insurers denied coverage under Exclusion 4b of the policy.[2]

Almost two years later, on September 3, 2004, the insurers filed a declaratory judgment action in New Jersey against Prudential seeking resolution of the coverage dispute. On August 3, 2005, Prudential filed an action for declaratory relief in the Delaware Chancery Court naming all primary and excess insurers. The insurers moved to dismiss, or in the alternative, to stay the Delaware proceeding in favor of its first-filed New Jersey action. The Delaware Chancery Court granted the motion for lack of subject matter jurisdiction, but invited Prudential to re-file in the Delaware Superior Court and also granted the insurers' motion to stay the Delaware proceeding while their action was pending in New Jersey.

Thereafter, Prudential filed a second amended complaint in Superior Court in Delaware and then moved to dismiss the New Jersey action based on the service of suit clause. The trial judge granted Prudential's motion, declaring Endorsement 1 to be a forum selection clause that gave Prudential the choice of forum in all instances.

---

[2] Exclusion 4b disclaimed liability for payment of any loss "based upon, arising from or in consequence of deliberate conflicts of interest, any dishonest, deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled, or deliberate non-compliance with any statute or regulation."

The insurers appealed, and the Appellate Division reversed. *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 394 *N.J.Super.* 71, 77, 925 *A.*2d 98 (App.Div.2007). In ruling, the panel relied on *American Employers' Insurance Co. v. Elf Atochem North America*, 280 *N.J.Super.* 601, 656 *A.*2d 58 (App.Div.1995) and declared that there is "no reason to depart from the majority rule that service of suit clauses do not limit the insurer's forum selection when it files first in the jurisdiction of its residence." We granted certification, 192 *N.J.* 482, 932 *A.*2d 32 (2007), "limited solely to the issue of whether the Service of Suit clause operates as a forum selection clause."

## II.

Prudential argues that the clear language of Endorsement 1 reveals that the provision is actually a forum selection clause entitling an insured to an absolute choice of forum for the coverage action; that the so-called "majority view" to the contrary, cited by the Appellate Division, has been rejected in a substantial number of jurisdictions; that the Appellate Division's reading of Endorsement 1 renders it superfluous; that if the insurers intended Endorsement 1 to be something other than a forum selection clause, they would have made that intention clear; that when Endorsement 1 is read *in pari materia* with Endorsement 26, a choice of law provision regarding punitive damages, Endorsement 1 clearly emerges as a forum selection device; and that the doctrine of *contra proferentem* requires the policy to be read in its favor.

The insurers counter that the clear language of Endorsement 1 reveals it to be nothing more than a run-of-the-mill service of suit clause; that a service of suit clause, unlike a forum selection clause, merely provides that an insurer is willing to submit to the jurisdiction of the insured's choosing, not that the insurer may not first initiate suit against the insured; that the Appellate Division ruled in accordance with the nearly unanimous line of authority from other jurisdictions and that the contrary authority cited by

Prudential is distinguishable because it considered only the situation in which the insured had filed first.

## III.

We briefly detail the rules governing insurance contract interpretation. In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route. *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 594–95, 775 *A.*2d 1262 (2001). If the language is clear, that is the end of the inquiry. *Ibid.* Indeed, in the absence of an ambiguity, a court should not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased. *Progressive Cas. Ins. Co. v. Hurley*, 166 *N.J.* 260, 272–73, 765 *A.*2d 195 (2001) (citing *Brynildsen v. Ambassador Ins. Co.*, 113 *N.J.Super.* 514, 518, 274 *A.*2d 327 (Law Div.1971)).

If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists. *Nester v. O'Donnell*, 301 *N.J.Super.* 198, 210, 693 *A.*2d 1214 (App.Div.1997). In that case, a court may look to extrinsic evidence as an aid to interpretation. *Ibid.* Where a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party if the contract was the result of negotiations between parties of unequal bargaining power. *Pacifico v. Pacifico*, 190 *N.J.* 258, 268, 920 *A.*2d 73 (2007) (citing *RCI Ne. Servs. Div. v. Boston Edison Co.*, 822 *F.*2d 199, 203 n. 3 (1st Cir.1987)).

Although not a canon of construction, courts frequently look to how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended, especially where rules in aid of interpretation fail to offer a clear result. *Cf. Weedo v. Stone–E–Brick, Inc.*, 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979) (accepting interpretations of provision of insurance contract by other jurisdictions as "thoroughly

persuasive" because of factual similarity and uniform wording of clauses); *see also Calamari & Perillo on Contracts* § 3.13 (5th ed. 2003) ("Where the rules in aid of interpretation and standards of preference fail to satisfy, courts frequently look to how other courts have interpreted the same or similar language."). Those are the rules that will guide our analysis.

## IV.

We return to the text of Endorsement 1, which the policy denominates as a "service of suit" clause:

> It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

All parties agree and it makes sense that "at the request of the insured" is a reference to the filing of a law suit. Thus, under Endorsement 1, if an insured is denied coverage, the insurer agrees to comply with all requirements necessary to submit itself to a court of competent jurisdiction in the United States in which the insured has chosen to file suit, and to be bound by the law and practice of such court. The question presented is whether Endorsement 1 reposes an absolute choice of forum in the insured under all circumstances. In other words, if an insurer sues first, can the insured still exercise its rights under the service of suit provision by filing a suit of its own, thereby "requesting" the insurer to submit to its chosen forum?

Prudential answers that question in the affirmative, relying on the language of Endorsement 1, which gives it the right to chose the forum when it files a lawsuit and, in particular, on the absence of any temporal limitation on its right to "request" the insured to submit to a forum.

The insurers counter, also based on the language of the Endorsement, that the policy is devoid of any limitation on their right to file first, and that once their suit is filed in a United States

court of competent jurisdiction, the purpose of Endorsement 1 is satisfied. That reading would preclude later invocation of the Endorsement by the insured.

Neither interpretation receives absolute support or absolute disapprobation from the words of the Endorsement. Thus, because the parties have advanced two plausible readings of Endorsement 1, generally supported by the text, the Endorsement must be deemed ambiguous.

## V.

In resolving that ambiguity, the history of the service of suit clause language is instructive. Developed by Lloyd's of London, the clause was limned to counter competitors' arguments that Lloyd's was not amenable to process in the United States and that potential customers thus should place their business with a domestic company. *Appalachian Ins. Co. v. Union Carbide Corp.*, 162 *Cal.App.*3d 427, 439–40, 208 *Cal.Rptr.* 627 (1984); *see also Columbia Cas. Co. v. Bristol–Myers Squibb Co.*, 215 *A.D.*2d 91, 635 *N.Y.S.*2d 173, 176 (1995) (recognizing established history of service of suit provision was to make foreign insurance companies amenable to suit in United States).

Concomitantly, the clause was intended to assure potential insureds that if they purchased a Lloyd's policy, disputes would be governed by the law of the United States and not the law of Britain. *See* Eugene R. Anderson et al., *Insurance Coverage Litigation* § 6.03[B] (2d ed.2003). The clause became a fixture in Lloyd's policies and later in policies of other insurers, essentially operating to guarantee that the insurer would submit to the insured's suit in a court of competent jurisdiction in the United States, thus obviating concerns over whether the insurer could be held liable in a coverage action. *Brooke Group Ltd. v. JCH Syndicate 488*, 87 *N.Y.*2d 530, 640 *N.Y.S.*2d 479, 663 *N.E.*2d 635, 638 (1996) (holding service of suit clause "generally provides no more than a consent to jurisdiction"); *Ace Ins. Co. v. Zurich Am.*

*Ins. Co.*, 59 *S.W.*3d 424, 428–29 (Ct.App.Tex.2001) (finding service of suit clause waiver of challenge to personal jurisdiction).

Where the insured first institutes suit, it has been uniformly held that the clause precludes any effort by the insurer to remove the action. *See, e.g., Int'l Ins. Co. v. McDermott Inc.*, 956 *F.*2d 93, 95–96 (5th Cir.1992) (noting service of suit provision waives right to removal); *Cessna Aircraft Co. v. Fid. & Cas. Co.*, 616 *F.Supp.* 671 (D.N.J.1985) (holding provision waived right of removal); *Perini Corp. v. Orion Ins. Co.*, 331 *F.Supp.* 453 (E.D.Cal.1971) (finding service of suit provision prevented removal of state actions initiated by insured).

That history is illuminative in assessing the parties' diametrically different interpretations of Endorsement 1 insofar as it reveals the rather circumscribed purpose behind a service of suit clause. Indeed, to the extent that an insurer submits to a court of competent jurisdiction in the United States, by filing its own lawsuit, the primary purpose of the service of suit clause would appear to be satisfied.

Prudential counters that that history is incomplete because, during the 1940s, the "shall be determined in accordance with the law and practice of such Court" language, which did not appear in the original version, was added. Anderson, supra, § 6.03[B]. It argues that the additional language is evidence of an intention to place the choice of forum in the insured's hands under all circumstances. We disagree. There is nothing in that language, which essentially guarantees the application of United States law, to suggest that it was intended also to provide an insured with the right to trump a first-filed suit by the insurer.

We are equally unpersuaded by Prudential's contention that the history of the service of suit clause sheds no light on its meaning where a domestic insurer is concerned. According to Prudential, if Endorsement 1 is read, as the historical record suggests, as a mere consent to jurisdiction, it will be rendered superfluous. We disagree. In fact, the clause has the modest but

real benefit of streamlining the litigation process for domestic insurers by eliminating, in advance, all challenges regarding jurisdiction, and by interdicting time-consuming removal proceedings, where the insured sues first. In short, the language is neither superfluous nor indicative of the reading Prudential advances here and the history of the clause points toward Chubb's contrary interpretation.

## VI.

In reaching our conclusion, we also look to whether there is a consensus among our sister jurisdictions over the interpretation to be given to the language in Endorsement 1. We do that because we assume that, where stock language has been uniformly interpreted in a particular way, sophisticated commercial entities are aware of that interpretation and that it has informed their understanding of the contract provision at issue. There is such consensus here.

The case law has overwhelmingly rejected the notion that an insured has the right to choose the forum in all instances and to avoid participation in a first-filed action by the insurer. *See, e.g., McDermott, supra,* 956 *F.*2d at 96 (holding where insurer was first to file "service of suit clause ... has no application"); *Ace Capital v. Varadam Found.,* 392 *F.Supp.*2d 671, 675 (D.Del.2005) (holding nothing in "service of suit" clause "prevents an insurer from bringing an action of its own against the insured"); *Northfield Ins. Co. v. Odom Indus.,* 119 *F.Supp.*2d 631, 635 (S.D.Miss.2000) (holding "service of suit" clause did not prohibit first-filed action by insurer); *Cannelton Indus., Inc. v. Aetna Cas. & Sur. Co. of Am.,* 194 *W.Va.* 186, 460 *S.E.*2d 1, 16–17 (1994) (holding service of suit clause neither barred insurer's first-filed suit, nor prevented resort to *forum non conveniens* by either party); *First State Ins. Co. v. Minn. Mining and Mfg. Co.,* 535 *N.W.*2d 684, 689 (Minn.Ct. App.1995) (holding service of suit clause did not prohibit insurer from bringing first-filed action and "did not prevent the court from using its equitable authority to grant the injunction against

the parallel action"). *See also Elf Atochem, supra,* 280 *N.J.Super.* at 609 n. 7, 656 *A.*2d 58 ("The 'first to file rule' or any other rules of jurisdiction are not affected by the Service of Suit clause in the [insurer's] agreement with defendant.").

We note that those courts have grappled with the issue of whether such an interpretation could lead to an unseemly race to the courthouse and have rejected that notion as support for reading a service of suit clause in the manner advanced here by Prudential. Indeed, they have concluded that a contrary interpretation would lead to equally "untenable results," for example, that the insured might never be required to respond to any action filed by the insurer. *See McDermott, supra,* 956 *F.*2d at 96 ("[Under an] absolute reading of the clause, [an insured] might not even be required to respond to a declaratory judgment or other action filed against it by the insurer."). For those courts, the solution to problematic situations, such as a race to the courthouse, an anticipatory filing, or the choice of an inappropriate forum, is resort to the "usual panoply of rules governing judicial economy, the integrity of judgments, comity between federal and state courts, and the like." *Ibid.* That is our view as well.

 We read the service of suit clause as it has been read by nearly every court that has considered it—as a consent to jurisdiction by the insurer and a prohibition against an insurer interfering with a forum initially chosen by the insured. The clause is no more expansive than that. It does not inhibit the insurer from filing first. Nor does it allow the insured to trump a first-filed action by the insurer. Fears about inappropriate forum choices by the insurer are unfounded. *Forum non conveniens,* comity and notions of judicial economy remain viable alternatives for any party who is hauled into what that party or the court considers an objectionable forum. 228–16 *Couch on Insurance* § 228:63 (2000). "Unlike a mandatory forum selection clause provision, a service of suit clause ... does not bar court consideration of *forum non conveniens.*" *Ibid.* (internal quotation omitted).

Given the clear, long-standing judicial interpretation to that effect, it is up to the parties to renegotiate the service of suit clause if they wish it to be interpreted otherwise.

## VII.

■■■ Alternatively, Prudential asks us to look beyond the clause itself to the policy as a whole for guidance, declaring that when the clause is viewed that way, it must be interpreted to give the insured an absolute right, under all circumstances, to choose the locus of its coverage action.

We have reviewed the entire insurance contract and have reached a contrary conclusion. There is nothing in the policy that requires us to interpret Endorsement 1 as anything other than a consent to jurisdiction where the insured files first. We find no merit in Prudential's suggestion that when Endorsement 1 is read *in pari materia* with Endorsement 26, a contrary meaning becomes clear. In relevant part, Endorsement 26 provides that

the law of the jurisdiction most favorable to the insurability of those damages shall control for the purpose of resolving any dispute between the Company and the Insured regarding whether the damages specified ... above are insurable ... provided that such jurisdiction: is where those damages were awarded or imposed; is where any Wrongful Act occurred for which such damages were awarded or imposed; is where any Insured Organization is incorporated or has its principal place of business; or is where the Company is incorporated or has its principal place of business.

As is evident, Endorsement 26 is a choice of law provision and, to us, it does not shed any light on the meaning of the service of suit clause. Once the forum is selected under the service of suit clause, the separate analysis in Endorsement 26 comes into play and governs choice of law. Both provisions of the policy can be read together and full throat can be given to each without necessarily denominating Endorsement 1 as devolving an absolute forum selection right on the insured.

■■■ Prudential misreads Endorsement 26 as somehow limiting the choice of forum to four jurisdictions: the place where the damages were awarded or imposed; the place where any wrongful

act occurred for which such damages were awarded or imposed; the place where the insurer or insured is incorporated or the place where the insurer or insured has its principal place of business. That is incorrect. Endorsement 26 does not limit the choice of forum at all but only governs which law will apply.

Nor do we credit Prudential's further argument that Endorsement 26 will be vitiated if Endorsement 1 does not provide an insured the right to choose the forum. The gist of that argument is that if an insurer is permitted to file first it will choose a forum that is hostile to the insurance of punitive damages, thus avoiding the command of Endorsement 26 that the law of the jurisdiction "most favorable" to the insurability of punitive damages shall control. According to Prudential, that requires us to read Endorsement 1 as a forum selection provision. As we have said, Endorsement 26 is only a choice of law provision and, even if the insurer files first, the chosen forum is bound generally to follow that provision.[3]

---

[3] That argument is the segue into what is lurking at the margins of this case: Prudential's concern that New Jersey will refuse to apply the law of Delaware because the insurance of punitive damages violates the public policy of this State. That concern is rooted in several questionable premises. The first is that the state would reflexively decline to apply law simply because it differs from its own. As our decision in *Caribe Hilton Hotel v. Toland*, reveals, that is not the case. 63 *N.J.* 301, 308, 307 *A.2d* 85 (1973) ("It should take a very strong case to preclude recovery upon a foreign contract on the ground of supposed conflict with local morals or policy." (quotation omitted)). More importantly, there has never been a declaration by this Court or the Legislature that punitive damages are uninsurable. We have, in fact, allowed punitive damages against a public entity despite the obvious absence of deterrence and retribution against the wrongdoer. *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 *N.J.* 405, 650 *A.2d* 958 (1994). It is exactly that scenario that is the underpinning of the notion that punitive damages should not be insurable. *Johnson & Johnson v. Aetna Cas. & Sur. Co.*, 285 *N.J.Super.* 575, 585, 667 *A.2d* 1087 (App.Div.1995). Moreover, the Legislature has at least implicitly recognized that insurance of punitive damages does not violate the public policy of this State. *N.J.S.A.* 17:30A–5 (prohibiting recovery of punitive damages "unless covered by the policy"). Given that the insurers in this case have always conceded that the law of Delaware applies, and that there is no clear indication that our public policy requires otherwise, we remain sanguine that our courts would hold the insurers to their concession and

■ Finally, contrary to Prudential's contention, the rules tending to favor an insured that has entered into a contract of adhesion are inapplicable where, as here, both parties are sophisticated commercial entities with equal bargaining power. *See Pacifico, supra,* 190 *N.J.* at 267–68, 920 *A.*2d 73 (requiring unequal bargaining power for application of *contra proferentem* ). In short, there is nothing about the policy as a whole that would require us to interpret Endorsement 1· to permit the insured to interfere with the insurer's first filing.

## VIII.

■ To reiterate, a service of suit clause is an agreement by the insurer to submit to personal jurisdiction in the court in which the insured has filed a coverage dispute. The clause permits the insurer to institute its own suit in the first instance. Both parties, however, remain free to seek relief from inappropriate filings under doctrines of judicial economy, including the doctrine of *forum non conveniens.*

## IX.

For the foregoing reasons, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO—6.

*Opposed*—None.

---

apply the law of Delaware in this matter. As such, Prudential's concerns do not lead us to interpret the service of suit clause as it suggests.