```
NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION
```
This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4267-15T1

JEANNE FINNEGAN,

    Plaintiff,

v.

INDUCTOTHERM CORP.,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

GREENTREE FOOD MANAGEMENT,
INC.,

    Third-Party Defendant-
    Respondent/Fourth Party
    Plaintiff,

v.

FRED DUNHOUR and THE DUNHOUR
AGENCY,

    Fourth-Party Defendants/
    Respondents.

_____

Argued May 9, 2017 — Decided August 22, 2017

Before Judges Messano, Espinosa and Grall.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2886-12.

Robert P. Avolio argued the cause for appellant Inductotherm Corporation (Avolio & Hanlon, PC, attorneys; Mr. Avolio and Catherine M. Brennan, on the briefs).

John P. O'Toole argued the cause for respondents Greentree Food Management, Inc., Fred Dunhour, and The Duhhour Agency (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Mr. O'Toole, on the brief).

PER CURIAM

Plaintiff Jeanne Finnegan, an employee of Greentree Food Management, Inc. (Greentree), suffered injuries following a slip and fall at work. Greentree provided cafeteria services to the employees of Inductotherm Corp. (Inductotherm), in a cafeteria in Inductotherm's building, pursuant to a written agreement (the Agreement).

The Agreement lacked any express indemnification provisions but provided in pertinent part: "Greentree will: Carry <u>Comprehensive General Liability Insurance</u> to the limits mutually agreed upon to cover its own operation. <u>Greentree will have Inductotherm Corp. listed as an additional insured on their General Liability Policy</u> and shall present at inception and annually thereafter satisfactory evidence thereof." (Emphasis added). The Agreement also required every Greentree employee to sign an

"agreement" on Greentree's letterhead recognizing his or her "sole and exclusive remedy w[ould] be under the workmen's (sic) compensation provided by . . . Greentree."

On the date of plaintiff's fall Greentree maintained a commercial general liability policy (the CGL policy) with Harleysville Insurance Company. It is undisputed that Greentree never added Inductotherm to the policy as an additional insured. Harleysville refused Inductotherm's tender of its defense, writing, "Inductotherm is not listed [as] an additional insured on the [CGL] policy nor does Inductotherm qualify as an insured under the policy."

Plaintiff filed a negligence complaint against Inductotherm, which, in turn, filed an answer and third-party complaint against Greentree, alleging breach of the Agreement, breach of the covenant of good faith and fair dealing and negligence. Greentree answered and filed a fourth-party complaint against its insurance broker, Fred Dunhour, and his company, The Dunhour Agency (collectively, Dunhour). Inductotherm amended its third-party complaint to include cross-claims against Dunhour for indemnification, as well as negligence and breach of contract.

Inductotherm and Greentree moved for summary judgment; the motion judge granted Greentree's motion and dismissed the third-party complaint. We granted Inductotherm's motion for leave to

appeal, summarily reversed and reinstated the third-party complaint.[1] At some point undisclosed by the record, Inductotherm settled with Finnegan.

A second Law Division judge then granted Greentree's motion to dismiss Inductotherm's negligence claim.[2] The parties' subsequent cross-motions for summary judgment were denied.

---

[1] The panel's order provided in pertinent part:

> The third-party complaint is reinstated and the matter is remanded to the trial court for further proceedings on the respective liability for negligence of third-party defendant or third-party plaintiff and breach of contract. The questions of liability for creating the dangerous condition causing plaintiff's accident and any resultant injuries [are] disputed. Further, the breach of contract claims are dependent on a determination of said liability, obviating summary judgment.

The parties and the trial judge understandably were confused by the order's contemplation of a trial on Greentree's and Inductotherm's "respective liability for negligence." Absent an express indemnity provision, "[b]y virtue of the exclusive remedy provisions of the Workers' Compensation Act . . . an employer is immune from suit by an employee, and may not be sued for contribution by a third-party tortfeasor." Kane v. Hartz Mountain Indus., Inc., 278 N.J. Super. 129, 145 (App. Div. 1994) (citing Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 184 (1986)), aff'd o.b., 143 N.J. 141 (1996).

[2] Inductotherm has not appealed that decision. As a result, we consider the points raised on appeal only in the context of Inductotherm's breach of contract and breach of the implied covenant of good faith claims.

A-4267-15T1

On April 25, 2016, the parties appeared for trial. After an off-the-record conference in chambers, the judge held oral argument on the record to consider legal arguments raised by Inductotherm and Greentree. Relying on Pennsville Shopping Center Corp. v. American Motorist Insurance Co., 315 N.J. Super. 519 (App. Div. 1998), certif. denied, 157 N.J. 647 (1999), the judge reasoned that even if Inductotherm had been added as an additional insured on Greentree's CGL policy, there nonetheless would be no coverage for plaintiff's claim because "the additional insured status has to be taken [to be] coextensive with . . . Greentree's liability." He determined that Greentree could not be liable for plaintiff's injuries because of the workers' compensation bar, N.J.S.A. 34:15-8, and pursuant to Ramos, supra, Inductotherm could not seek contribution from Greentree. The judge granted summary judgment and dismissed Inductotherm's claims against Greentree and Dunhour. This appeal followed.

Inductotherm argues it was reversible error for the judge, without formal notice or motion, to grant summary judgment on the day of trial after earlier denying the parties' cross-motions seeking the same relief. We do not necessarily condone the procedure employed by the judge. See, e.g., Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) ("[P]laintiff came to court prepared to pick a jury, but rather

was required to defend a motion, brought by the court <u>sua</u> <u>sponte</u>, to dismiss his complaint."). However, because we are reversing on other grounds, and because the record fails to reveal that Inductotherm ever objected to the judge's consideration of what was a purely legal issue, Inductotherm's argument in this regard warrants no further discussion.[3]

Inductotherm also argues the judge misconstrued <u>Pennsville</u> and <u>Ramos</u> and erred as a matter of law by applying those cases to its breach of contract claim. Inductotherm contends the CGL policy would have provided it with coverage for plaintiff's claim had Greentree and Dunhour properly added Inductotherm as an additional insured. It urges us to reverse and enter summary judgment as to liability on its breach of contract claim.

We agree with Inductotherm that the judge misconstrued <u>Pennsville</u>, which has little application to these facts. We reverse and remand for further proceedings consistent with this opinion.

---

[3] Inductotherm never sought reconsideration in the trial court. On appeal, and without seeking permission to supplement the record, its counsel included a certification in Inductotherm's appendix. Generously read, the certification explains counsel's surprise that the judge, instead of picking a jury, entertained legal argument and dismissed the complaint. Notably, the certification does not state that counsel ever objected to the judge's course.

A-4267-15T1

"The interpretation of a contract is subject to de novo review by an appellate court." Kieffer v. Best Buy, 205 N.J. 213, 222 (2011) (citations omitted). "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Id. at 223.

We interpret contractual terms by considering "their plain and ordinary meaning." Ibid. (quoting M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002)). "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Ibid. However, "[i]f the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

It is undisputed that the Agreement required Greentree to add Inductotherm as an additional insured on its CGL policy. Its failure to do so was a breach of the agreement. See, e.g., Antenucci v. Mr. Nick's Mens Sportswear, 212 N.J. Super. 124, 131 (App. Div. 1986) ("[T]he lessee contracted to provide liability insurance coverage for the landlord. Because of its breach of that covenant it was liable for the losses sustained by the landlord flowing from that breach.").

As already noted, the judge accepted Greentree's argument that our decision in Pennsville compelled dismissal of Inductotherm's complaint. There, we concluded a shopping center tenant's insurance policy did not provide coverage to the landlord-owner for injuries suffered by a patron who fell in the parking lot. Pennsville, supra, 315 N.J. Super. at 523. The lease obligated the tenant to indemnify the landlord for injuries occurring on the demised premises and to name the landlord as an additional insured on the tenant's liability policy. Id. at 521. The lease, however, obligated the landlord to maintain the common areas of the shopping center and to indemnify the tenant against any claim that resulted from the landlord's failure to do so. Id. at 521-22.

We held, "[u]nder the terms of the lease . . . , tenant bore responsibility only for damages incurred on the demised premises. Its undertaking to name landlord as an additional insured must be taken to be coextensive with the scope of tenant's own liability." Id. at 523. Importantly, we also held, "the question whether a party is insured at all may be a separate matter susceptible of resolution by reference to any relevant matter such as an underlying contract, here the lease agreement, which clarifies the intendments of the parties in apportioning responsibility and providing for insurance coverage." Ibid.

Here, however, there was no indemnification provision in the Agreement, much less cross-indemnification commitments between Greentree and Inductotherm that limited each party's responsibilities for conditions on the premises, as did the lease in Pennsville. Additionally, the panel in Pennsville never discussed the particular terms of the additional insured endorsement of the tenant's policy.

We have since cautioned against over reading Pennsville's holding, recognizing

> the court in Pennsville relied upon the lease in concluding that the additional insured endorsement in the tenant's policy only provided coverage to the landlord for any claim arising out of an accident occurring on the demised premises. Although the court did not quote the additional insured endorsement in the tenant's policy, the language of that endorsement was presumably ambiguous. Therefore, the court resorted to the terms of the lease to resolve the ambiguity, which is an appropriate use of extrinsic evidence in construing an insurance policy.
>
> [Jeffrey M. Brown Assocs., Inc. v. Interstate Fire & Cas. Co., 414 N.J. Super. 160, 171 (App. Div.) (emphasis added), certif. denied, 204 N.J. 41 (2010).]

As Judge Skillman noted,

> [a]n insurance policy is a contract between the insurer and the insured. Thus, the extent of coverage . . . is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage.

> [*Id.* at 171-72 (quoting <u>Bovis Lend Lease LMB,
> Inc. v. Great Am. Ins. Co.</u>, 855 <u>N.Y.S.</u>2d 459,
> 464 (N.Y. App. Div. 2008)).]

The only remaining issue is whether Inductotherm suffered damages as a proximate result of Greentree's breach. In <u>Robinson v. Janay</u>, we held, "[t]he damages which may be recovered for breach of an agreement to furnish an insurance policy is the loss sustained by reason of the breach, 'the amount that would have been due under the policy provided it had been obtained.'" 105 <u>N.J. Super.</u> 585, 591 (App. Div.) (quoting 43 <u>Am. Jur. 2d, Insurance</u>, § 174, p. 231), <u>certif. denied</u>, 54 <u>N.J.</u> 508 (1969).

Therefore, we must determine whether the CGL policy would have provided Inductotherm with a defense and indemnification against plaintiff's suit. The principles we apply to contracts generally apply in equal force to insurance contracts. "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." <u>Chubb</u>, <u>supra</u>, 195 <u>N.J.</u> at 238 (citing <u>Zacarias v. Allstate Ins. Co.</u>, 168 <u>N.J.</u> 590, 594-95 (2001)). "If the language is clear, that is the end of the inquiry." <u>Ibid.</u> (citing <u>Zacarias</u>, <u>supra</u>, 168 <u>N.J.</u> at 594-95). "[I]n the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured

than the one purchased." Ibid. (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-73 (2001)).

The CGL policy provided coverage to the "Named Insured" listed on the declarations page, and "any other person or organization qualifying as a Named Insured under this policy." The declarations page listed Greentree alone as the insured.

The CGL policy provided coverage for all bodily injury claims "that the insured becomes legally obligated to pay." It included an exclusion, however, for "'bodily injury' to . . . (1) [a]n 'employee' of the insured arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business." The "Separation Of Insureds" section of the policy provided, "this insurance applies: a. [a]s if each Named insured were the only Named Insured; and b. [s]eparately to each insured against whom claim is made or 'suit' is brought."

Had Inductotherm been an additional insured under the CGL policy, the exclusion would not have applied because plaintiff was not an employee of Inductotherm. This result is consistent with the reasoning of two of our reported cases that construed similar contractual provisions, Erdo v. Torcon Construction Co., 275 N.J. Super. 117, 121-23 (App. Div. 1994), and Maryland Casualty Co. v. New Jersey Manufacturers Casualty Insurance Co., 48 N.J. Super.

314, 323-26 (App. Div.), aff'd, 28 N.J. 17 (1958), both of which were comprehensively summarized by the Third Circuit in ArcelorMittal Plate, LLC v. Joule Technical Services, Inc., 558 F. App'x. 205, 209 (3d. Cir. 2014) ("Two New Jersey appellate courts, having considered the issue in considerable depth, have concluded that an employee exclusion does not bar coverage for claims against one insured by a different insured's employees."). We need not expound further. The CGL policy presumably would have provided Inductotherm with a defense.

We hesitate to reach that conclusion as a matter of law given the record before us. Because the CGL policy did not include Inductotherm as an additional insured, we cannot say whether any additional insured endorsement would have included limitations or exclusions to the general insuring provisions of the policy. For example, the CGL policy in the record includes an endorsement naming the lessor of Greentree's "[p]remises," "Maplewood Apartment & Jager Management," as an additional insured. That endorsement added the lessor as "an insured . . . but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Greentree]."

Dunhour was deposed, but his testimony provides no information in this regard. The record fails to reveal any discovery taken from Harleysville's representative that might shed

12

light on the precise terms of any additional insured endorsement, or whether Inductotherm's addition to the CGL policy as an additional insured would have been without any limitation of coverage.

In short, we reverse the order under review, reinstate Inductotherm's third-party complaint and remand the matter for further proceedings. Although Inductotherm urges us to reverse and enter summary judgment in its favor, Inductotherm must establish that if it had been added as an additional insured on the CGL policy, the policy would have provided a defense and potentially indemnification. We hasten to add that if, after adding Inductotherm as an additional insured, the CGL policy contained no other coverage limitations or exclusions, Inductotherm is entitled to summary judgment as to its claims that Greentree breached the Agreement, and Inductotherm would have received a defense to, and indemnification for, plaintiff's claims. Erdo, supra, 275 N.J. Super. at 121-23; Maryland Cas., supra, 48 N.J. Super. at 323-26. However, Inductotherm did not submit any proof of the damages it claimed were the proximate consequences of the breach, nor did the parties or the trial court address the issue. That shall also be a subject of the remand proceedings.

Finally, at the Law Division hearing, Inductotherm agreed that because the judge granted summary judgment to Greentree, its claims against Dunhour were properly dismissed. We reinstate those claims.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION