NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4963-15T1

CARLOS ARIEL DETRES,

 Petitioner-Respondent,

v.

WORKFORCE LOGISTICS CORP.,

 Respondent-Respondent.

________________________

CARLOS ARIEL DETRES,

 Petitioner-Respondent,

v.

SAMUELS, INC., t/a
BUY-WISE,

 Respondent-Respondent.

_________________________

 Argued June 7, 2017 – Decided August 25, 2017

 Before Judges Simonelli, Carroll and Gooden
 Brown.

 On appeal from the Division of Workers'
 Compensation, Department of Labor and
 Workforce Development, Claim Petition Nos.
 2013-30674 and 2013-32832.
 James Santomauro argued the cause for
 appellant Public Service Mutual Insurance
 Company (Biancamano & DiStefano, PC,
 attorneys; Mr. Santomauro, of counsel and on
 the briefs).

 Christopher P. Gargano argued the cause for
 respondent Carlos Ariel Detres.

 James P. Paoli argued the cause for respondent
 Workforce Logistics Corp. (Cooper Levenson,
 PA, attorneys; Walter J. LaCon, on the
 brief).

 Thomas S. Novak argued the cause for
 respondents New Hanover Insurance Company and
 Samuels, Inc., t/a Buy-Wise (Sills Cummis &
 Gross, PC, attorneys; Mr. Novak, of counsel
 and on the brief; Michael J. Pisko, on the
 brief).

PER CURIAM

 By leave granted, Public Service Mutual Insurance Company

(Public Service) appeals from the May 9, 2016 order of the Division

of Workers' Compensation denying Public Service's motion for

summary judgment regarding insurance coverage. The judge of

compensation determined that Public Service was responsible for

workers' compensation coverage to Workforce Logistics Corporation

(Workforce) for a work-related accident of Carlos Ariel Detres

(Detres), a worker provided by Workforce, and that Public Service

was required to provide Workforce with attorney representation.

For the reasons that follow, we affirm.

 2 A-4963-15T1
 I.

 Workforce is a New York company that provides temporary labor

specializing in warehouse operations for the automotive industry.

Workforce places workers with companies in New York and New Jersey.

Buy Wise, an automotive parts distributor owned by Samuels, Inc.,

was one of the companies for which Workforce provided temporary

laborers pursuant to an oral agreement. Buy Wise operated from

New Jersey locations at 2091 Springfield Avenue in Vauxhall and

32 Bishop Street in Jersey City. Buy Wise’s Jersey City location

is the site of the accident that is central to this litigation.

 On April 23, 2013, Workforce submitted an application for

workers' compensation coverage to Public Service. The application

listed two worksite locations, both in New York. The application

also indicated that no employees "travel out of state[,]" or

"perform work for other businesses or subsidiaries[,]" and that

Workforce did not "lease employees to or from other employers[.]"

On April 26, 2013, Public Service sent Workforce a workers'

compensation insurance policy quote, which included a proposed

draft of a workers' compensation insurance policy contract for

coverage from April 23, 2013 to April 23, 2014.

 Thereafter, Public Service issued a Workers' Compensation and

Employer’s Liability Insurance Policy to Workforce for the policy

period May 1, 2013 to May 1, 2014, for an annual premium of $15,450

 3 A-4963-15T1
for coverage up to $100,000 for each "bodily injury by accident."

The policy provided coverage for two locations in New York, one

in Jamaica and one in Glendale, and noted no other coverage

locations. Under the policy provisions, only the workplaces and

locations listed in the policy were covered and Public Service had

"no duty to defend a claim, proceeding, or suit that [was] not

covered[.]" Further, under the policy, "[b]odily injury by

accident must occur during the policy period" to be covered and

the policy specified that the Workers' Compensation Law of New

York shall apply.

 On October 18, 2013, Detres, a New Jersey resident and

temporary worker provided by Workforce to Buy Wise, suffered severe

injuries when he was struck by a truck while working at Buy Wise's

Jersey City location. Detres filed a workers' compensation

employee claim petition against Workforce and against Buy Wise,

seeking workers' compensation benefits and asserting that he

suffered major head trauma, major hearing impairment, neck

injuries, damage to his eyes and vision, speech impairment, and

extreme pain. In an answer filed on December 3, 2013, and amended

on January 9, 2014, Workforce denied that Detres had a compensable

accident arising out of or in the course of employment with

Workforce and Public Service denied that it provided workers'

compensation coverage to Workforce in New Jersey.

 4 A-4963-15T1
 On January 28, 2014, the judge of compensation ordered Buy

Wise to "provide [Detres] with temporary disability benefits from

the date of [the accident] until further order of the court" and

"provide [Detres] with all necessary medical treatment for

injuries relating to the [October 18, 2013] incident." The order

was entered "without prejudice" to Buy Wise and "subject to the

[c]ourt's disposition on issues of joint employment and coverage."

At the time of Detres' accident, Buy Wise was insured by Hanover

Insurance Company (Hanover).

 Public Service contested coverage of Detres' accident,

asserting that the policy in effect at the time of the accident

provided coverage for two New York locations only and the addition

of the New Jersey locations by endorsement occurred subsequent to

the accident. Following Detres' accident, on December 12, 2013,

Benjamin Markan of JPS Remco Agency, the agency that purportedly

placed workers' compensation coverage for Workforce, sent an email

to Ganesh Narin, an Office Manager with Workforce, informing him

that "there [was] no workers' compensation coverage for any [New

Jersey] locations" in Workforce's policy with Public Service.

Markan requested that Narin send him the address and payroll amount

for the New Jersey location so that it could be added to the policy

as soon as possible to avoid "other claims without coverage in

place." On the same date, Judy Truitt, a Commercial Underwriting

 5 A-4963-15T1
Manager with the Simon Agency, sent an email to Markan requesting

that he add two New Jersey locations to Workforce's account,

namely, 2091 Springfield Avenue in Vauxhall with a payroll of

$100,000, and 32 Bishop Street in Jersey City with a payroll of

$20,000.

 On January 6, 2014, Sharon Ramlochan, a Commercial

Underwriter with the Simon Agency, sent an email to Markan

inquiring whether December 23, 2013 should be the effective date

for the workers' compensation coverage for the New Jersey

locations. In response, Markan inquired whether the coverage

could be backdated any further. Ramlochan replied that since the

request to add the New Jersey locations was sent on December 16,

2013, she would request that December 16, 2013 be the effective

date, to which Markan agreed. Thereafter, Ramlochan contacted

Irina Kletsel, a Senior Technical Underwriter with Magna Carta

Companies, and requested that the Vauxhall and Jersey City

locations be added to Workforce’s workers' compensation coverage

with an effective date of December 16, 2013.

 On January 8, 2014, the policy was amended to add coverage

for the Vauxhall and Jersey City locations. The annual premium

for the amended policy totaled $28,366, reflecting an increase of

$12,916 from the previously charged premium for the two New York

locations only. Ultimately, Public Service charged an additional

 6 A-4963-15T1
premium of only $4,816, which it contends reflects coverage

beginning on January 8, 2014. However, the amended policy listed

the same policy period from May 1, 2013 to May 1, 2014,

encompassing the date of the accident, and listed both the Jersey

City and Vauxhall locations as covered locations along with the

two New York locations. Further, the amended policy contained no

qualifying language regarding a later effective date of coverage

for the two New Jersey locations and, like the original policy,

included a choice of law provision that New York law shall apply.1

 On December 15, 2015, Hanover and Buy Wise moved for partial

summary judgment and a determination that coverage for Detres'

injuries be provided by either Public Service, or, alternatively,

the Uninsured Employer’s Fund, and directing Public Service or the

Uninsured Employer's Fund to reimburse Hanover for workers'

compensation benefits paid to Detres. On January 25, 2016, Public

Service opposed Hanover's and Buy Wise's motion and moved for

summary judgment and a determination that Public Service's

workers' compensation policy with Workforce did not cover the

Detres accident.

 On May 3, 2016, following oral argument, the judge of

1
 Thereafter, Workforce renewed the workers' compensation policy
with Public Service for the policy term of May 1, 2014 to May 1,
2015, with an estimated annual premium of $30,000.

 7 A-4963-15T1
compensation determined that Public Service was required to

provide coverage for benefits under the workers' compensation

insurance policy with Workforce, including "an obligation to

provide legal representation" for Workforce. The judge explained

that his decision was "grounded in a number of alternative"

theories. First, the judge premised his decision on "the plain

language of the policy as it existed up until its termination[.]"

According to the judge, the policy expressly "stated that the New

Jersey locations were included, the location where [Detres] was

injured, and the term of that policy by the plain and explicit

language, included the period of time during which [Detres] was

injured." The judge rejected Public Service's argument that

coverage of the New Jersey locations should be limited to the

period from January 8, 2014 to May 1, 2014, finding that such a

limitation on the policy could have been "easily achieved" by the

insertion "of a single sentence, . . . which was not inserted[.]"

 Next, while the judge acknowledged "that the activities of

the parties and the action to amend the policy taken in January,

may arguably create an ambiguity[,]" the judge resolved that

ambiguity against Public Service under "the law of both New York

and New Jersey" by considering the following two principles:

 Number one, it is resolved when there is
 a choice of interpretation to the detriment
 of the party drafting the contract, the

 8 A-4963-15T1
 contract of adhesion, . . . to the detriment
 of the insurance carrier in this instance, but
 that’s a general principle applying to all
 contracts of adhesion. In addition to that,
 there is a general principle also in agreement
 with both New York and New Jersey, that
 contracts of insurance are interpreted to
 favor coverage rather than non-coverage.

 So both of those principles would
 militate towards a finding of coverage in this
 instance, and I so find.

 Finally, the judge addressed "the choice of law argument[,]"

and concluded that, under that analysis, Public Service was

required to provide coverage. The judge reasoned:

 [T]he choice of law determinations made by
 [c]ourts in New Jersey are based upon the
 governmental interest. Clearly, [the]
 interest of the State of New Jersey and its
 public policy, would afford coverage to
 workers in the situation of [Detres]. The
 fact that this is a tragic and profoundly
 damaging incident, put aside for a moment, New
 Jersey has chosen by its law to address the
 issue of giving coverage by specifically
 providing when you write an insurance policy,
 when you give insurance for [w]orkers'
 [c]ompensation in New Jersey, you are covering
 all of the employees of that employer. I
 believe it's [N.J.S.A. 34:15-87]. If that law
 is applied, clearly when Public Service wrote
 the contract that contemplated the possibility
 of locations outside of the State of New York,
 they were covering by operation of New Jersey
 law, all employees of that employer, and
 Public Service itself makes the point, and the
 exact nature of the business conducted by
 Workforce makes [that] subject to further
 definition, but clearly Public Service's
 argument, is that they provide employees in
 the auto retail and wholesale business to

 9 A-4963-15T1
 operate, and that is the very business that
 Workforce was conducting in the State of New
 Jersey.

 So clearly, under application of New
 Jersey law, that coverage would be extended
 to [Detres], and to his circumstances, and the
 governmental interest of the State of New
 Jersey and choice of law, overwhelming[ly]
 militates that New Jersey's interest is
 superior in this particular instance.

On May 9, 2016, the judge entered a memorializing order. On May

27, 2016, pursuant to Rule 2:2-4, Public Service moved for leave

to file an interlocutory appeal, which we granted on July 14,

2016.2 This appeal followed.

 On appeal, Public Service argues that: (1) there is

insufficient credible evidence in the record to support the ruling;

(2) the court should have applied New York law pursuant to the

contracted-for choice of law provision in the policy; (3) under

either New York or New Jersey law, Workforce's policy did not

cover Detres' injury because the amendment to the policy did not

apply retroactively; (4) N.J.S.A. 34:15-87 is inapplicable because

Hanover insured the New Jersey locations; and (5) Workforce is not

entitled to workers' compensation coverage for this accident

because it made material misrepresentations in the application.

2
 On May 27, 2016, Public Service also moved before the judge of
compensation for a stay pending appeal, which application was
denied on June 17, 2016.

 10 A-4963-15T1
 II.

 The standard governing appellate intervention in workers'

compensation cases is

 'whether the findings made could reasonably
 have been reached on sufficient credible
 evidence present in the record,' considering
 'the proofs as a whole,' with due regard to
 the opportunity of the one who heard the
 witnesses to judge of their credibility . . .
 and, . . . with due regard also to the agency's
 expertise where such expertise is a pertinent
 factor.

 [Close v. Kordulak Bros., 44 N.J. 589, 599
 (1965) (quoting State v. Johnson, 42 N.J. 142,
 162 (1964)).]

 Judges of compensation "are regarded as experts, and their

findings are entitled to deference," so long as they are "supported

by articulated reasons grounded in the evidence." Lewicki v. N.J.

Art Foundry, 88 N.J. 75, 89-90 (1981) (citations omitted). Only

where the court’s decision is erroneous in light of the credible

evidence on the record so as to create an unjust result may this

court disturb the trial court’s judgment. See Perez v. Monmouth

Cablevision, 278 N.J. Super. 275, 282 (App. Div. 1994), certif.

denied, 140 N.J. 277 (1995).

 "However, where the focus of the dispute is not on credibility

but, rather, alleged error in the trial judge's evaluation of the

underlying facts and the implications to be drawn therefrom," the

scope of appellate review is somewhat broader. Manzo v.

 11 A-4963-15T1
Amalgamated Indus. Union Local 76B, 241 N.J. Super. 604, 609 (App.

Div.), certif. denied, 122 N.J. 372 (1990). "Where our review of

the record 'leaves us with the definite conviction that the judge

went so wide of the mark that a mistake must have been made,' we

may 'appraise the record as if we were deciding the matter at

inception and make our own findings and conclusions.'" Ibid.

(quoting Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J.

Super. 65, 69 (App. Div. 1989)). We will afford no deference to

a judge of compensation's interpretation of the law and review

legal questions de novo. Renner v. AT&T, 218 N.J. 435, 448 (2014).

 Here, applying an expanded scope of review, we are satisfied

that the judge's evaluation of the underlying facts and the legal

implications to be drawn therefrom were correct. Public Service

argues that the compensation judge erroneously determined that the

insurance contract afforded coverage to Workforce for Detres'

accident. Public Service asserts that the judge was mistaken in

finding that the contract was one of adhesion and in interpreting

the contract to favor coverage. Public Service also argues that

the emails between the parties reveal their intention to make

coverage effective beginning in December 2013, some two months

after the date of the accident.

 In assessing the meaning of provisions in an insurance

contract, courts first look to the plain meaning of the language

 12 A-4963-15T1
at issue. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.,

195 N.J. 231, 238 (2008). "If the language is clear, that is the

end of the inquiry." Ibid. Thus, "[w]hen the terms of an insurance

contract are clear, it is the function of a court to enforce it

as written and not to make a better contract for either of the

parties." Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

Rather, when "the language of a contract is plain and capable of

legal construction, the language alone must determine the

agreement's force and effect." Manahawkin Convalescent v.

O'Neill, 217 N.J. 99, 118 (2014) (citations omitted).

 However, "[w]hen the provision at issue is subject to more

than one reasonable interpretation, it is ambiguous, and the 'court

may look to extrinsic evidence as an aid to interpretation.'"

Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of

Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom, supra,

195 N.J. at 238). Whether an ambiguity exists in a contract is a

question of law. Nester v. O'Donnell, 301 N.J. Super. 198, 210

(App. Div. 1997).

 In the case of insurance contracts specifically, "the general

rule of construction [is] that if the controlling language of a

policy will support two meanings, one favorable to the insurer and

the other to the insured, the interpretation favoring coverage

should be applied[.]" Butler v. Bonner & Barnewell, Inc., 56 N.J.

 13 A-4963-15T1
567, 576 (1970) (citing Mazzilli v. Accident & Cas. Ins. Co., 35

N.J. 1, 7 (1961)); see also Doto v. Russo, 140 N.J. 544, 556 (1995)

(noting that "New Jersey courts often have construed ambiguous

language in insurance policies in favor of the insured and against

the insurer"); Simonetti v. Selective Ins. Co., 372 N.J. Super.

421, 429 (App. Div. 2004) (holding that insurance "coverage clauses

should be interpreted liberally, whereas those of exclusion should

be strictly construed").

 Further, insurance "contracts are to be [construed] in a

manner that recognizes the reasonable expectation of the insured."

Zuckerman v. Nat. Union Fire Ins. Co., 100 N.J. 304, 320-21 (1985).

"Moreover, [w]hile specific words may not be ambiguous, the context

in which they are used may create an ambiguity. The court's

responsibility is to give effect to the whole policy, not just one

part of it." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226

N.J. 403, 416 (2016) (citations omitted).

 Governed by these principles, we agree with the judge that

Detres' accident was covered under Public Service's insurance

contract. The contract term was unambiguous. Although Workforce's

two New Jersey locations were not covered in the initial insurance

policy, the amendment to the policy issued on January 8, 2014

clearly indicated that the Jersey City and Vauxhall locations were

covered under the policy for the period May 1, 2013 to May 1,

 14 A-4963-15T1
2014. Public Service argues that the intention of the parties as

evident in the emails between them was that coverage of the two

New Jersey locations was not to begin until December 16, 2013, at

the earliest. We are satisfied that the judge properly declined

to consider these communications as extrinsic evidence as the

contract was unambiguous on its face.

 Equally unavailing are Public Service's arguments that the

additional premium charged in the amount of $4,816 reflected a

pro-rated start date of January 8, 2014, and the schedule of policy

changes contained in the amended policy, stating "1/8/2014 – [a]dd

two locations," created ambiguities that require us to look to

extrinsic evidence. All four locations were clearly specified in

the amended policy as covered for the period May 1, 2013 to May

1, 2014, and there was no qualifying language indicating that

coverage of the two New Jersey locations was partial or did not

run for the entire policy period May 1, 2013 to May 1, 2014. We

will not manufacture an ambiguity where none exists. Chubb, supra,

195 N.J. at 238.

 Public Service also argues that the judge's application of

N.J.S.A. 34:15-87 to this case was "misguided" as it is

"undisputed" that Hanover provided insurance coverage for Buy Wise

at the Jersey City location. Accordingly, Public Service argues

that N.J.S.A. 34:15-87 "does not apply to this case because the

 15 A-4963-15T1
location that was excluded from the policy was 'concurrently

separately insured' by Hanover."

 N.J.S.A. 34:15-87 states in pertinent part:

 No policy of insurance against liability
 arising under [the Workers' Compensation Law]
 shall contain any limitation of the liability
 of the insurer to an amount less than that
 payable by the assured on account of his
 entire liability under this chapter, and no
 provision of such policy shall be construed
 to restrict the liability of the insurer to
 any stated business, plant, location, or
 employment carried on by an assured unless the
 business, plant, location, or employment
 excluded by such restriction shall be
 concurrently separately insured or exempted as
 provided for in this article.

 In Lohmeyer v. Frontier Ins. Co., 294 N.J. Super. 547 (App

Div. 1996), certif. denied, 148 N.J. 461 (1997), we interpreted

N.J.S.A. 34:15-87 to mandate workers' compensation coverage "for

all business related activities [of a covered employee], even if

the policy does not cover the particular location at which the

injuries occurred." Id. at 549. In Lohmeyer, we reversed the

trial court's dismissal of a claim petition of a trainer who was

thrown from a horse and injured while employed by a stable at a

facility that was not specified in the stable's workers'

compensation insurance policy. We determined that "[a] policy

which purports to provide workers' compensation coverage is

governed by the workers' compensation laws and must conform with

 16 A-4963-15T1
its regulatory policy" and held that in the absence of evidence

that other insurance existed or that the stable was self-insured,

"the policy, as written, provided workers' compensation coverage

for [the trainer.]" Id. at 556-57.

 Here, Hanover stipulated only to the fact that it insured Buy

Wise. Contrary to Public Service's contention, Buy Wise has

disputed being Detres' employer. However, it is undisputed that,

at the very least, Public Service provided workers' compensation

coverage to Workforce's New York locations. Thus, under N.J.S.A.

34:15-87, Public Service was required to provide workers'

compensation coverage to Workforce's New Jersey locations as well.

 Public Service argues further that it did not intentionally

exclude the Jersey City location from coverage in the first

insurance policy, but omitted such coverage only because Workforce

misrepresented that it did business in New York only. Given

Workforce's purposeful and material misrepresentations, Public

Service asserts that N.J.S.A. 34:15-87 does not apply and

Workforce's workers' compensation insurance policy with Public

Service is void based on the "willful misrepresentation that it

had no New Jersey locations."

 An insurer may void a policy due to post-loss

misrepresentation if the misrepresentation was knowing and

material. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 540 (1990).

 17 A-4963-15T1
However, fraudulent statements made in an application for a

workers' compensation insurance policy cannot be the basis for

voiding the policy. Am. Millennium Ins. Co. v. Berganza, 386 N.J.

Super. 485, 490-91 (App. Div. 2006). Citing N.J.S.A. 34:15-83 and

-84, which creates a direct relationship between the insurer and

the insured's employees, we noted that

 [w]hatever the rights may be between the
 carrier and the insured employer, so long as
 the policy, once it is issued, is outstanding,
 the carrier's liability to the injured
 employee remains. No question of warranties
 or of false representations made by the
 employer in securing the policy and no
 stipulations of the policy as between the
 employer and carrier have force or effect as
 between the carrier and such an employee who
 was injured while the policy is outstanding.

 . . . .

 [A]s between the insurance carrier and the
 employee[,] the fact that a policy is issued
 upon untrue statements made by the employer
 [to the insurance carrier] is no defense [to
 liability].

 [Id. at 490-91 (citations and quotations
 omitted).]

Public Service's argument is the same argument we rejected in

Berganza and the same result applies here.

 Public Service argues that New York law should apply to the

contract dispute because "the weight of the evidence clearly shows

that New York . . . has a superior interest in this matter." As

 18 A-4963-15T1
a result, Public Service asserts that the compensation judge erred

in its legal analysis and application of the choice-of-law test

to the facts. To support its argument, Public Service stresses

that a New York insurance company provided insurance to a New York

company for two New York locations based on a policy specifying

that New York law shall apply, and an application stating that

employees did not travel out of state and did not perform work for

other businesses, and that the company did not lease employees to

other companies.

 As we have held,

 In general, our Supreme Court has rejected the
 traditional choice-of-law rule of lex loci
 delicti (for torts) and lex loci contractus
 (for insurance contracts) in favor of a more
 flexible 'governmental-interest' standard,
 which requires application of the law of the
 state with the greatest interest in, or most
 significant connections with, the issues
 raised or the parties and the transaction.

 [Lonza, Inc. v. The Hartford Accident & Indem.
 Co., 359 N.J. Super. 333, 342 (App. Div. 2003)
 (citing Veazey v. Doremus, 103 N.J. 244, 247-
 49 (1986)).]

 "The first step in this choice-of-law analysis is an inquiry

into whether there is 'an actual conflict' between the laws of

this state and another." Lonza, supra, 359 N.J. Super. at 342

(citations omitted). "'Any such conflict is to be determined on

an issue-by-issue basis.'" Ibid. (quoting Veazey, supra, 103 N.J.

 19 A-4963-15T1
at 248). The second step in the analysis is for the court to

"'determine the interest that each state has in resolving the

specific issue in dispute.'" Id. at 345 (quoting Gantes v. Kason

Corp., 145 N.J. 478, 485 (1996)). For the third step, the court

is required to determine "how strongly the contacts involved relate

to each state's policy and whether application of one law will

further or frustrate the policies of the other state." Walsh v.

Mattera, 379 N.J. Super. 548, 555 (App. Div. 2005).

 In applying the governmental interest test, New Jersey courts

consider the following factors set forth in Section 6 of the

Restatement:

 (a) the needs of the interstate and
 international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested
 states and the relative interests of those
 states in the determination of the particular
 issue,

 (d) the protection of justified
 expectations,

 (e) the basic policies underlying the
 particular field of law,

 (f) certainty, predictability, and
 uniformity of result, and

 (g) ease in the determination and application
 of the law to be applied.

 20 A-4963-15T1
 [Restatement (Second) of Conflict of Laws, §
 6 (1971).]

See also Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 134

N.J. 96, 103 (1993).

 Specifically with respect to casualty-insurance contracts,

our Supreme Court held that the choice-of-law analysis must first

look to Restatement § 193 which "provides that the law of the

state that 'the parties understood was to be the principal location

of the insured risk . . . [governs unless] some other state has a

more significant relationship under the principles stated in §6

to the transaction and the parties[.]'" Gilbert Spruance, supra,

134 N.J. at 112 (quoting Restatement (Second) of Conflict of Laws,

§ 193 (1971)). Such a determination necessarily requires a fact

specific case-by-case analysis. Pfizer, Inc. v. Emplrs Ins., 154

N.J. 187, 190 (1998).

 Notably, in N. Bergen Rex Transp. v. Trailer Leasing Co., 158

N.J. 561 (1999), our Supreme Court held that "'[o]rdinarily, when

parties to a contract have agreed to be governed by the laws of a

particular state, New Jersey courts will uphold the contractual

choice if it does not violate New Jersey's public policy.'" Id.

at 568 (quoting Instructional Sys., Inc. v. Computer Curriculum

Corp., 130 N.J. 324, 341 (1992)).

 However, New Jersey law will govern if:

 21 A-4963-15T1
 (a) the chosen state has no substantial
 relationship to the parties or the transaction
 and there is no other reasonable basis for the
 parties' choice, or

 (b) application of the law of the chosen state
 would be contrary to a fundamental policy of
 a state which has a materially greater
 interest than the chosen state in the
 determination of the particular issue and
 which . . . would be the state of the
 applicable law in the absence of an effective
 choice of law by the parties.

 [Id. at 568-69 (quoting Instructional Sys.,
 supra, 130 N.J. at 342).]

 Given the choice of law provision in the contract at issue

here, the test established in N. Bergen Rex Transp. will guide our

analysis. To that end, we must first determine whether there is

an actual conflict between the laws of New Jersey and New York.

New York law allows a workers' compensation carrier to exclude

specific locations from an insured's policy, NY CLS Work Comp

§54(4), whereas New Jersey law expressly precludes such exclusion,

N.J.S.A. 34:15-87. Accordingly, there is an actual conflict

between the laws of New York and New Jersey.

 Next, we must determine which state has the greater interest

in resolving the specific dispute. It is undisputed that Detres

was a New Jersey resident at the time of the accident, and that

the site of the injury was his workplace in Jersey City.

"Traditionally, an injury in New Jersey will trigger jurisdiction

 22 A-4963-15T1
in the New Jersey compensation court." Connolly v. Port Auth. of

N.Y. and N.J., 317 N.J. Super. 315, 320 (App. Div. 1998) (citing

Boyle v. G. & K. Trucking Co., 37 N.J. 104, 108 (1962)). Likewise,

"[t]he employee's New Jersey residency appears, as well, to be

sufficient at least where there are also some employment contacts

in New Jersey[.]" Ibid. (citations omitted). Even "where there

exists neither location of the injury, location of the employment

contract or hiring, or residency of the employee in New Jersey,

jurisdiction may still arise where the 'composite employment

incidents present [a]n . . . identification of the employment

relationship with this State." Id. at 320-21 (quoting Phillips

v. Oneida Motor Freight, Inc., 163 N.J. Super. 297, 303 (App. Div.

1978)) (alterations in original).

 While we acknowledge that two New York corporations entered

into a contract for workers' compensation insurance coverage, and

the original policy applied only to the New York locations, we are

satisfied that application of New York law would be contrary to

the fundamental policies and protections of New Jersey's Workers'

Compensation law. Moreover, given New Jersey's materially greater

interest in the determination of this dispute, New Jersey's law

would undoubtedly apply in the absence of a contrary choice of law

provision in the insurance contract.

 Pursuant to N.J.S.A. 34:15-87, New Jersey has a strong

 23 A-4963-15T1
interest in ensuring that employers and insurance carriers do not

exclude certain employment locations from coverage. Consistent

with this worker-friendly philosophy, New Jersey courts have

interpreted the Workers' Compensation statute to achieve such

results. See Sroczynski v. Milek, 396 N.J. Super. 248, 256 (App.

Div. 2007), aff’d, 197 N.J. 36 (2008) (holding that there is a

strong public policy presumption favoring determining workers'

compensation coverage); Daniello v. Machise Express Co., 119 N.J.

Super. 20, 23-24 (Law Div. 1972), aff’d, 122 N.J. Super. 144 (App.

Div. 1973) (holding that "[t]o accomplish the purposes for which

[N.J.S.A. 34:15] was enacted, the court will give its provisions

the most liberal construction that it will reasonably bear in

favor of the injured employee in order to avoid harsh results to

the worker and his [or her] family.")

 Further, applying New Jersey law would not frustrate

principles of New York's Workers' Compensation law. Rather, the

same conclusion would likely be reached under New York law where

NY CLS Work Comp § 54(4) was afforded a "liberal construction" to

find coverage in a workers' compensation insurance policy as long

as the court did not "extend the coverage of the policy to an

accident occurring at a location clearly outside of its terms[.]"

Scammell v. Deleece Pastries, Inc., 212 N.Y.S.2d 546, 547 (N.Y.

App. Div. 1961). See also Thomson v. Brute Spring & Equip., Inc.,

 24 A-4963-15T1
789 N.Y.S.2d 753, 754 (N.Y. App. Div. 2005) (finding no coverage

where "nothing in the carrier's policy in effect at the time of

[the worker's] injury addresse[d] the nature of the work which

[the worker] was performing or purport[ed] to cover the location

at which he performed it[.]"). Here, since the amended insurance

policy in effect on the October 18, 2013 accident date explicitly

provided coverage to Detres' work location, the same conclusion

would obtain had New York law applied.

 In addition, it cannot be said that the justified expectations

of the parties would be frustrated by application of New Jersey

law. Detres is a New Jersey resident working at a New Jersey work

site when he was injured. It is not outside the realm of

possibility that New Jersey's Workers' Compensation law would

determine coverage. Finally, as to ease in the determination and

application of the law to be applied, both factors weigh in favor

of applying New Jersey law for the same reason. Although both

Workforce and Public Service are New York corporations, they

purposefully availed themselves of New Jersey law by doing business

in New Jersey and contracting for workers' compensation coverage

of a New Jersey location. Indeed, in these circumstances,

application of New Jersey law provides fairness and certainty to

the parties involved. In sum, a choice of law analysis weighs

heavily in favor of applying New Jersey law in this instance.

 25 A-4963-15T1
Accordingly, we affirm the decision of the judge of compensation.

 Affirmed.

 26 A-4963-15T1